**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| SHOLOM RUBASHKIN, | |
| Movant, | No. 13-CV-1028-LRR |
| | No. 08-CR-1324-LRR |
| vs. | |
| UNITED STATES OF AMERICA. | **ORDER REGARDING** |
| | **MOTION TO RECUSE** |

═══════════════

### *TABLE OF CONTENTS*

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **2**

II.     RELEVANT BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **2**

III.    PARTIES' ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **17**

   A.   *The Movant* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **17**
   B.   *The Government* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **22**

IV.    ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **26**

   A.   *Standards Governing Disqualification* . . . . . . . . . . . . . . . . . . .  **26**
   B.   *Procedural Obstacles* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **35**

        1.   *Continuation of criminal proceedings and scope of instant*
             *proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **35**
        2.   *Litigation bars* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **39**
        3.   *Timeliness* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **44**
        4.   *Waiver and forfeiture* . . . . . . . . . . . . . . . . . . . . . . . . . .  **50**

   C.   *Merits of Disqualification Claims Under 28 U.S.C. § 455* . . . . . . .  **52**

        1.   *The undersigned's actions prior to the commencement of the*
             *movant's criminal case* . . . . . . . . . . . . . . . . . . . . . . . . . .  **53**
        2.   *The undersigned's actions after the conclusion of the movant's*
             *jury trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **60**

   **3.**  *The undersigned's spouse* . . . . . . . . . . . . . . . . . . . . . . . . *64*

   **4.**  *The grounds considered collectively* . . . . . . . . . . . . . . . . . *71*

**V.** *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *73*

# I.  INTRODUCTION

   Sholom Rubashkin's motion to recuse (civil docket no. 12) is the matter before the undersigned.  Sholom Rubashkin ("the movant") filed such motion on January 29, 2014.

## II.  RELEVANT BACKGROUND[1]

   [Immigration and Customs Enforcement ("ICE")], along with numerous other entities, including the United States Attorney's Office ("USAO") for the Northern District of Iowa, began planning [an] enforcement action in October of 2007. In the fall of 2007,[4] the USAO advised the undersigned that the office was considering a worksite enforcement action in the eastern part of the Northern District of Iowa and that law enforcement expected to arrest several hundred persons on immigration-related felony offenses.  [The] USAO inquired as to the undersigned's schedule, which was promptly provided.[5] The undersigned did not receive any details beyond that.  At some later time, when it became clear that the government intended to go forward with the enforcement action, the undersigned contacted numerous district court judges in the Eighth Circuit and inquired whether they would be willing to come to Iowa and assist if the need arose.  The undersigned also contacted the Chief Judge of the Eighth Circuit Court of Appeals to ask that specified out-of-district judges be designated to the Northern District of Iowa to assist.  As the undersigned stated in a June 2008 article, "[t]he court definitely couldn't accommodate that number [of defendants]

---

[1] The undersigned and the Eighth Circuit Court of Appeals exhaustively recited the facts and history of this case.  *See* Rule 33 Order (criminal docket no. 958); *United States v. Rubashkin*, 655 F.3d 849, 853-57 (8th Cir. 2011).  Given the issues addressed post-judgment and on direct appeal, the undersigned deems it appropriate to quote extensively from the undersigned's prior order and the Eighth Circuit Court of Appeals' appellate opinion.

without planning."  The Third Branch Article ([criminal] docket no. 950-2) at 74.

_____

[4] The [undersigned] does not recall mention of a potential enforcement action prior to December of 2007, but it appears from reliable documentation that [the] USAO made the undersigned aware of the potential worksite enforcement action as early as October of 2007.

[5] It is important to note that the United States District Court for the Northern District of Iowa has two court locations that are approximately 350 miles apart (Sioux City in the western part of the district and Cedar Rapids in the [eastern part of the district]). The undersigned is the only district court judge chambered in the eastern side of the district who handles criminal felony matters.  Magistrate Judges do not have the authority under federal statute to accept a plea or sentence in a felony criminal matter.  *See* 28 U.S.C. § 636.  Thus, inquiries concerning the undersigned's availability from prosecutors and defense attorneys are routine and appropriate.

_____

The undersigned was never informed—through a powerpoint presentation or otherwise—who the targets of the prosecutions would be or even where the worksite enforcement action was to take place.  The undersigned's planning was limited to ensuring that a sufficient number of judges, court-appointed attorneys and interpreters would be available and that the court would be able to function efficiently at an off-site location.  The undersigned did not tour the Cattle Congress grounds in Waterloo, Iowa.  However, court personnel toured the grounds and worked on the grounds of the Cattle Congress making preparations prior to the day of the enforcement action.

Rule 33 Order (criminal docket no. 958) at 4-6.

The movant managed Agriprocessors, Inc. ("Agriprocessors"), a meat packing plant in Postville, Iowa.  At one point, such plant employed over a thousand people.

The majority of Agriprocessors['] workers were undocumented immigrants. In May 2008, [ICE] conducted the nation's largest worksite immigration action at the Agriprocessors plant. ICE arrested almost four hundred of its employees for immigration violations and criminally charged most of them. Around that time, [the movant] received letters from the [USAO] in the Northern District of Iowa indicating that he was the target of a federal investigation for financial and immigration crimes.

*Rubashkin*, 655 F.3d at 854; *see also* Gov't Exhibits 5502-5503 (criminal docket nos. 912-282 & 912-283).

After the administrative arrest of nearly 400 people, court personnel, including the undersigned district court judge, Chief Magistrate Judge Paul Zoss and Magistrate Judge Jon S. Scoles arrived at the Cattle Congress grounds in Waterloo to begin the work of the court. Although the undersigned had obtained designations for several district judges to travel to the Northern District of Iowa to assist, initially the only district judge on the grounds was the undersigned. As it became clear that the number of arrestees would, in fact, be in the hundreds, District Court Judge Mark W. Bennett from the Northern District of Iowa and District Court Judge Ralph Erickson from the District of North Dakota traveled to Waterloo to assist.

As defense counsel concedes, no court could move off-site with its personnel, over thirty interpreters from outside the district, defense attorneys and technology without significant advance planning. Logically, the Chief Judge of the District and the only resident judge near Waterloo would have to be consulted. During and soon after the legal proceedings in Waterloo, numerous articles and letters were written concerning the process. For instance, an attorney who declined to represent defendants in Waterloo wrote a letter criticizing the court's involvement. An interpreter also wrote an article critical of the proceedings. A legal publication entitled "The Third Branch" featured an article discussing the court's preparations for the large number of defendants that came before it. Additionally, [in July of 2008], the United States House of Representatives Judiciary Subcommittee

conducted hearings related to the enforcement action and the subsequent court proceedings.[2]

These publications, among other documents, led a defendant in a related case to file a motion seeking the undersigned's recusal pursuant to 28 U.S.C. § 455(a), which states that a judge "shall disqualify [himself or herself] in any proceeding in which [his or her impartiality] might reasonably be questioned." *See United States v. Martin De La Rosa-Loera*, 08-CR-1313-LRR, docket no. 30 [(N.D. Iowa 2009)]. Defendant Martin De La Rosa-Loera filed [a motion to recuse] on August 13, 2008, after his plea of guilty was accepted but prior to the [undersigned] conducting his sentencing hearing. De La Rosa-Loera attached twenty-four exhibits to his [motion to recuse], including: (1) articles from national and local newspapers; (2) press releases from interest groups, the government and Mr. Robert Phelps, the Clerk of Court for the

_____

[2] In response to a question about the necessity of coordination and communication between the government and the court prior to the enforcement action, Attorney General Michael B. Mukasey stated:

> The use of the term "ex parte" contact . . . appears to presuppose that something inappropriate or unusual occurred. That would be an inaccurate assumption. Any time a criminal or civil search warrant is obtained or a criminal complaint is filed and a warrant is obtained prosecutors and investigators meet with judicial officials. In instances where larger than normal numbers of arrests are expected to be generated as a result of an enforcement operation it is not only common but necessary for prosecutors and enforcement personnel to engage in communications with judges and other court officials such as the United States Marshals Service, Pretrial Services, Probation Officers, and others. The purpose for such coordination is to ensure that all facets of the federal criminal justice system are prepared to appropriately handle large volumes of criminal cases in a timely and appropriate manner. This is what occurred in this instance. *See* Answers to Written Questions at 133-34 (available online at the following address: h t t p : / / w w w . g p o . g o v / f d s y s / p k g / C H R G - 110shrg52690/pdf/CHRG-110shrg52690.pdf).

> Northern District of Iowa; (3) letters from a public interest group to the undersigned and from a local attorney to a Congresswoman; (4) criminal docket sheets; and (5) an interpreter's "personal account" of his involvement in the Waterloo cases. De La Rosa-Loera argued that the undersigned should recuse herself based on the court's pre-enforcement action planning. On September 29, 2008, the [undersigned] denied [De La Rosa-Loera's motion to recuse]. *See* [*id.*, docket no. 60]. In the [order denying the motion to recuse], the [undersigned] discussed [the undersigned's] pre-enforcement action planning, deemed it logistical in nature and stated that any and all preparation was conducted pursuant to [the undersigned's] role as Chief Judge of the Northern District of Iowa. *Id.* at 6.

Rule 33 Order (criminal docket no. 958) at 6-7.

In October and November of 2008, the government commenced criminal proceedings against the movant by filing criminal complaints against him. Ultimately, the government presented evidence to the grand jury in November of 2008, and, after considering the evidence, the grand jury returned multiple indictments that charged the movant with immigration and financial crimes. At a December 9, 2008 status conference, the attorneys for the parties and the undersigned discussed the filing of a recusal motion and selected January 30, 2009 as the deadline for filing such a motion. Transcript of Telephonic Hearing (criminal docket no. 168) at 35.

> [The movant's defense] counsel was aware of [the order denying De La Rosa-Loera's motion to recuse] and its contents but did not move for . . . recusal at [the movant's] trial or for any related discovery. Nor did [the movant] object to the deadline the [undersigned] had set for recusal motions. After that deadline had passed, [the movant] made a Freedom of Information Act request to ICE for records regarding its meetings with the USAO and the [undersigned].

*Rubashkin*, 655 F.3d at 855.

Bradshaw, Fowler, Proctor & Fairgrave, P.C., ("Bradshaw") is a law firm that employs over 40 attorneys, including the undersigned's spouse, Michael H. Figenshaw.

In March of 2009, attorneys from Bradshaw were retained to represent five businesses affiliated with and/or owned in substantial part by the movant. Bradshaw attorneys represented four of those businesses—Nevel Properties Corporation, Amereeka Properties, LLC, SFG Corporation and Best Value, Incorporated—in Chapter 11 bankruptcy proceedings and represented the other business, Cottonballs, LLC, in other matters. Bradshaw attorneys had dozens of conversations and meetings with the movant and identified him as the debtors' primary liaison. The movant played an active role in the bankruptcy cases and was involved on almost a daily basis. Bradshaw attorneys also had dozens of conversations and exchanged emails with the movant's criminal defense attorneys: Guy R. Cook, F. Montgomery Brown and Adam D. Zenor.[3] In light of the work that ten attorneys, two law clerks and four legal assistants from Bradshaw provided in connection with bankruptcy proceedings that occurred between February 27, 2009 and July 16, 2010, the bankruptcy court approved the payment of more than $250,000 to Bradshaw. *See generally* Movant's App'x (civil docket no. 12) at 114-294.

On July 16, 2009, a grand jury returned a 163-count seventh superseding indictment against the movant (criminal docket no. 544). Count 1 charged the movant with conspiracy to harbor undocumented aliens for profit, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i). Counts 2 through 70 charged the movant with harboring and aiding and abetting the harboring of undocumented aliens for profit, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii), 1324(a)(1)(A)(iv), 1324(a)(1)(A)(v)(II) and 1324(a)(1)(B)(i). Count 71 charged the movant with conspiracy to commit document fraud, in violation of 18 U.S.C. § 371. Count 72 charged the movant with aiding and abetting document fraud, in violation of 18 U.S.C. §§ 1546(a) and 2. Counts 73 through

---

[3] Daniel R. Fritz also represented the movant. But, his representation focused on jury selection matters. Similarly, Allan Ellis and Karen L. Landau represented the movant. However, they filed their appearances in January and February of 2010 and primarily addressed sentencing issues.

86 charged the movant with bank fraud, in violation of 18 U.S.C. § 1344. Counts 87 through 110 charged the movant with false statements and reports to a bank, in violation of 18 U.S.C. § 1014. Counts 111 through 124 charged the movant with wire fraud, in violation of 18 U.S.C. § 1343. Counts 125 through 133 charged the movant with mail fraud, in violation of 18 U.S.C. § 1341. Counts 134 through 143 charged the movant with money laundering and aiding and abetting money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i) and 2. Counts 144 through 163 charged the movant with willful violation of an order of the secretary of agriculture and aiding and abetting a willful violation of an order of the secretary of agriculture, in violation of 7 U.S.C. § 195 and 18 U.S.C. § 2.

Pursuant to the movant's request, the undersigned ordered separate trials on Counts 1 through 72 ("Immigration Counts") and Counts 73 through 143 ("Financial Counts") (criminal docket no. 519).[4] Also upon the movant's request for a change in venue, the undersigned ordered the trial to take place in South Dakota. From October 13, 2009 to November 12, 2009, the undersigned presided over a jury trial on the Financial Counts, which the undersigned renumbered as Counts 1 through 91.[5]

> [The movant's] trial on the [Financial Counts] focused on Agriprocessors' fraudulent inflation of collateral. The government also introduced some evidence related to immigration violations which was relevant to the fraud charges. The [seventh superseding] indictment alleged that

---

[4] The government filed the seventh superseding indictment after the undersigned granted the movant's motion for separate trial. The seventh superseding indictment altered the numbering of the Immigration Counts and Financial Counts and added Counts 144 through 163, which were tried with the Financial Counts.

[5] The renumbered Counts are as follows: Counts 73 through 86 became Counts 1 through 14, Counts 87 through 110 became Counts 15 through 38, Counts 111 through 124 became Counts 39 through 52, Counts 125 through 133 became Counts 53 through 61, Counts 134 through 143 became Counts 62 through 71 and Counts 144 through 163 became Counts 72 through 91.

> Agriprocessors had fraudulently told the bank it was not "in
> violation of any law, statute, [or] regulation . . . which . . .
> would in any respect materially and adversely affect the
> collateral . . . or [Agriprocessors'] property, business,
> operations, or condition." The immigration evidence both
> provided an alternative theory of bank fraud and formed the
> basis for fifteen counts of false statements to a bank. 18
> U.S.C. § 1014.

*Rubashkin*, 655 F.3d at 855 (fourth through eighth alteration in original). On November 12, 2009, the jury returned guilty verdicts on renumbered Counts 1 through 71, 73 through 80, 84 through 89 and 91 (criminal docket no. 736). The jury returned not guilty verdicts on renumbered Counts 72, 81, 82, 83 and 90. On November 19, 2009, the undersigned granted the government's motion to dismiss without prejudice the Immigration Counts and related criminal forfeiture provisions (criminal docket no. 746). The allegations underlying the Immigration Counts dealt with the May 12, 2008 worksite enforcement action. On March 1, 2010, the undersigned denied the movant's motion for judgment of acquittal and combined motion for judgment of acquittal and motion for new trial (criminal docket no. 854).

Following the return of the guilty verdicts, the undersigned detained the movant (criminal docket nos. 735 & 748). Between January and February of 2010, several individuals published statements on websites or emailed statements concerning the movant's detention and what would occur if the movant was not released. *See, e.g.*, Gov't Exhibit 2 (civil docket no. 28-3). Prior to the sentencing hearing or on April 23, 2010, the government emailed the movant regarding those communications. In its email, the government disclosed the following:

> During the pendency of this matter, Chief Judge Linda R.
> Reade has received several communications that may be
> characterized as threatening. Some of these communications
> are or appear to be connected to this case. The investigations
> regarding the communications connected to this case are being
> conducted by the Federal Bureau of Investigation. The United

States Attorney's Office for the Northern District of Iowa is recused from these investigations because they involve a Northern District Judge.

Our office has been informed that the progress of the FBI's investigations is such that disclosure of the communications to you will not adversely affect the investigations. Enclosed please find copies of the communications being investigated.

Chief Judge Reade has recently expressed concern to the United States Marshal's Service and our office's management about the progress of these investigations. Management has informed Chief Judge Reade we are recused on the matters and has directed her to the appropriate FBI Office (Cedar Rapids) and United States Attorney's Office (Southern District of Iowa).

Movant's App'x (civil docket no. 12) at 95-96. Additionally, other individuals emailed statements or faxed statements to the undersigned after the movant's trial. *See* Movant's App'x (civil docket no. 12) at 591-648 (describing steps that law enforcement officials took in response to statements and clarifying that investigation was complete and no possibly threatening communications were received after January 4, 2011); *see also* Court Exhibits 1-3 (criminal docket nos. 912-1, 912-2, 912-3, 912-4 & 912-5) (collecting correspondence); Defense Exhibits 9300, 9301A, 9301B, 9302, 9303, 9504, 11203 & 11204 (criminal docket nos. 912-18, 912-42, 912-43, 912-44, 912-45, 912-57, 912-93, 912-94 (collecting correspondence); Gov't Exhibits 5522, 5523, 5525, 5528 & 9305 (criminal docket nos. 912-291, 912-292, 912-294, 912-296 & 912-298) (collecting information).

From April 28, 2010 to April 30, 2010, the undersigned held a sentencing hearing. The undersigned took evidence and gave the movant his right of allocution. The undersigned took the sentencing issues, including that the loss amount was too high because the government threatened forfeiture of Agriprocessors' assets, under advisement. On June 21, 2010, the undersigned filed a sentencing memorandum (criminal docket no. 927), detailing the undersigned's interpretation and computation of the advisory sentencing

guidelines, revealing the sentence the undersigned intended to impose after considering all of the factors under 18 U.S.C. § 3553(a), discussing the evidence supporting the undersigned's sentence and declining to vary from the advisory guideline range. On June 22, 2010, the sentencing hearing reconvened, and the undersigned imposed a sentence at the low end of the advisory guideline range. On July 2, 2010, the movant filed a notice of appeal (criminal docket no. 932).

Bradshaw attorneys represented Best Value, Incorporated throughout its bankruptcy proceedings. However, in July of 2010, Bradshaw attorneys filed a motion to withdraw from representing Nevel Properties Corporation in its bankruptcy proceedings. New counsel for Nevel Properties Corporation opposed the final fee petition submitted by Bradshaw attorneys.

On August 5, 2010, the movant filed a motion for a new trial under Federal Rule of Criminal Procedure 33(b)(1) (criminal docket no. 942). In support of his request for relief, he cited evidence that he obtained pursuant to his Freedom of Information Act request. He also sought discovery and adjudication by another judge. On October 27, 2010, the undersigned denied the movant's motion for a new trial (criminal docket no. 958). Before doing so, the undersigned, in pertinent part, stated:

> Based on the facts and ignoring all rumor and innuendo, the [undersigned] finds that recusal was not required in this case. An average person on the street, privy to all the facts of this case, would presume that the Chief Judge of a district court must perform certain duties to ensure that court proceedings are efficient and afford all constitutional guarantees to defendants. That is precisely what the undersigned did in relation to the enforcement action.[10]

> The temporary relocation of judges and other court personnel to other parts of the Northern District of Iowa was consistent with the court's past practice. For example, in April of 1996, the Honorable Michael J. Melloy, then-United States District Court Judge for the Northern District of Iowa, and the Honorable John A. Jarvey, then-United States

Magistrate Judge for the Northern District of Iowa, presided over dozens of criminal immigration cases at the National Guard Armory in Charles City, Iowa.

Consistent with past efforts, attorneys and interpreters were provided checklists and pattern proceedings transcripts before the Waterloo court proceedings began. A reasonable, disinterested observer, knowing all the facts, would understand that these checklists and pattern proceedings transcripts were not a sinister effort on the part of the federal judges involved to "script" the Waterloo proceedings. The Magistrate Judges designed the checklists and pattern proceedings transcripts for the benefit of *all* participants to ensure that all laws were followed and all pertinent topics covered.[11] Checklists are routinely made available to all counsel in other criminal cases and have been posted on the court's website. They merely give life to the requirements of Federal Rule of Criminal Procedure 11. The pattern proceedings transcripts were deviated from, revised and improved throughout the Waterloo cases. They were revised continually in an attempt to find language that could be interpreted more easily and that would make concepts as clear as possible to non-English speaking persons.

Any other statements or innuendo published in the media or elsewhere simply do not represent the facts. The pertinent facts are these: (1) the undersigned was never informed prior to the commencement of the enforcement action that [the movant] was or could be a target of the enforcement action; (2) the undersigned was not told prior to May 12, 2008 where the enforcement action would occur; (3) the undersigned did not express personal support for or policy agreement with the enforcement action; (4) any knowledge that the [undersigned] had prior to the enforcement action was specifically tailored to ensuring that the court could gather the necessary resources to guarantee arrestees their rights; (5) the undersigned did not visit the site at the Cattle Congress before the day of the commencement of the enforcement action; (6) providing the dates when the court is unavailable is common and necessary because the undersigned is the only district judge in the eastern part of the district that handles felony

criminal matters; (7) the [undersigned] did not perform any functions that fall within the executive branch (i.e. who to charge, what to charge and whether a plea agreement offer should be made and the terms of it); and (8) the undersigned did faithfully and impartially discharge and perform all of the duties that are incumbent upon her as the Chief Judge of the Northern District of Iowa.

─────────────────

[10] The involvement of the undersigned, as well as the other judges in the Waterloo cases, was no different than other multiple-defendant cases. Judges routinely approve search warrants, decide where and when hearings will be held, conduct initial appearances, preside over arraignments and decide whether or not to approve plea agreements reached by the United States Attorney, the defendant and the defense attorney.

[11] Shortly before May 12, 2008, Judge Scoles was made aware of the charges that could be filed by virtue of reviewing and signing hundreds of complaints and search warrants.

─────────────────

Rule 33 Order (criminal docket no. 958) at 17-19. On November 8, 2010, the movant filed an additional notice of appeal (criminal docket no. 959).

The undersigned's spouse, Michael H. Figenshaw, had a partnership interest in Bradshaw. He, however, "retired" and gave up his equity interest in Bradshaw on December 31, 2010. Even though he is no longer a partner of Bradshaw, he is still affiliated with Bradshaw, that is, he is of counsel. Since January 1, 2011, he has not routinely represented clients, and he has not been compensated by receiving a share of the fees earned by other Bradshaw attorneys.

On September 16, 2011, the Eighth Circuit Court of Appeals addressed whether the undersigned's meetings with ICE and the USAO created an appearance of partiality that necessitated recusal. *See Rubashkin*, 655 F.3d at 855-59. As background, it stated:

Around the time of his sentencing, [the movant] obtained the records he had requested under [the Freedom of Information Act] over a year earlier. The records reflected meetings between the . . . court and ICE personnel before any indictment. Representatives of the USAO were also present. The records included emails and reports of meetings relating to the need for facilities to handle the anticipated arrests for immigration violations. These documents appeared to be internal memoranda and unedited notes taken by ICE personnel in the author's own words, rather than quotations from meeting participants. It is not clear from the documents whether ICE's first contact with the . . . court was with the clerk of court or if ICE approached the chief judge directly about its logistical needs.

According to the minutes, the chief judge met with ICE and USAO personnel before the surprise action at the plant to discuss the needs for judges, interpreters, defense counsel, and detention facilities to handle hundreds of expected arrestees. Arrangements included setting up temporary court offices near Postville, providing dozens of mobile office trailers for defense counsel, and renting a nearby stadium to house prospective arrestees. The agencies also received information about open dates on the . . . court's calendar. There is no indication in the minutes that the meetings with the . . . court concerned any other type of prosecution.

The minutes also show that before the immigration action, the USAO "briefed" the . . . court on the large number of simultaneous arrests it anticipated, the need for additional judges, interpreters, and courtrooms, and for advance arrangements "with the United States Public Defenders office." Another set of minutes attributed to the . . . court "full support for the initiative," and an email between two ICE officials referred to the . . . court as a "stakeholder." The court appeared "willing to support the immigration operation in any way possible" through "staffing and scheduling." The . . . court would keep its calendar open on the anticipated dates of the immigration arrests.

A few months before the surprise immigration action, the . . . court purportedly "requested a briefing on how the operation

> [would] be conducted" and set a deadline for a "final
> gameplan." The record also contains a slide presentation from
> ICE that mentioned previous enforcement actions against
> Agriprocessors relating to environmental, agricultural, and
> safety matters. It is unclear if the . . . court ever viewed those
> slides. There is no indication that the . . . court ever saw any
> of the ICE emails or minutes or had any opportunity to edit
> them.

*Id.* at 855-56. With respect to the merits of the movant's contentions, the Eighth Circuit

Court of Appeals determined that the movant failed to satisfy the requirements of Federal

Rule of Criminal Procedure 33(b). *Id.* at 857-58. Aside from determining that the court

did not err in denying the movant's motion for a new trial based on newly discovered

evidence, the Eighth Circuit Court of Appeals considered the propriety of raising the issue

of recusal for the first time on appeal. *Id.* at 858-59. After discussing (1) the timeliness

of the movant's recusal request; (2) the standard that applies when a party is aware of the

basis for recusal, such party does not seek recusal and the judge does not recuse sua

sponte; and (3) the lack of any evidence showing bias or prejudice on the part of the court,

the Eighth Circuit Court of Appeals concluded that the facts did not give rise to an

obligation to recuse under 28 U.S.C. § 455(a) and, consequently, the court properly denied

the movant's motion for a new trial. *Id.* at 857-59. After the Eighth Circuit Court of

Appeals resolved the movant's claims on direct appeal, the movant filed a petition for a

writ of certiorari (criminal docket no. 972), which the Supreme Court denied on October

1, 2012. *See Rubashkin v. United States*, ___ U.S. ___, 133 S. Ct. 106 (2012).

On September 13, 2013, the government filed a motion for order to show cause

(criminal docket no. 1008). On September 16, 2013, the undersigned granted such motion

and set a hearing on the matter (criminal docket no. 1009). During a hearing on

September 23, 2013, the undersigned determined that the movant's criminal defense

attorneys and several individuals who represented the movant or had some connection to

him violated the rule that prevents parties, lawyers or other persons acting on their behalf

from contacting trial jurors after they reach verdicts (criminal docket no. 1031). On September 30, 2013, the movant filed his motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (civil docket no. 3) ("motion pursuant to 28 U.S.C. § 2255").[6] On October 1, 2013, the undersigned held another hearing during which the undersigned addressed the repercussions for impermissibly contacting jurors who served during the movant's trial (criminal docket no. 1046). On October 4, 2013, the undersigned considered the parties' proposed scheduling of the proceedings under 28 U.S.C. § 2255 and directed them to respond in a particular manner (civil docket no. 4). On October 8, 2013, the undersigned entered an order that addressed the contacts that the movant's family members, attorneys and others had with trial jurors (criminal docket no. 1049). Such order acknowledged that the movant agreed not to use any content of the interviews of the petit jurors in future legal proceedings and prohibited the parties and their lawyers from contacting any petit juror (criminal docket no. 1049).

On November 22, 2013, the government filed a motion to dismiss (civil docket no. 5) and an answer (civil docket no. 6). On December 11, 2013, the government filed an amended answer (civil docket no. 10). Approximately four months after filing his motion pursuant to 28 U.S.C. § 2255, the movant filed the motion to recuse (civil docket no. 12). On March 19, 2014, the government filed a resistance (civil docket no. 28) to the motion to recuse. On March 18, 2014, the movant filed a motion to amend his motion pursuant

---

[6] The motion pursuant to 28 U.S.C. § 2255 asserts three grounds for relief. All of them are premised on *Brady v. Maryland*, 373 U.S. 83, 87 (1963). They are as follows: (1) the government (i) failed to disclose exculpatory information concerning actions it took to influence the trustee overseeing Agriprocessors' bankruptcy and prospective parties looking to buy Agriprocessors during bankruptcy proceedings and (ii) presented inaccurate testimony during the sentencing hearing; (2) the government failed to disclose material, favorable facts concerning pre-enforcement action communications and, consequently, defense counsel failed to timely seek disqualification based on the appearance of bias; and (3) the government failed to disclose exculpatory information concerning the purpose of transferring money among accounts. *See generally* Motion Pursuant To 28 U.S.C. § 2255 (civil docket no. 3).

to 28 U.S.C. § 2255 (civil docket no. 27).  On April 23, 2014, the movant filed a reply (civil docket no. 40) to the resistance.  The motion to recuse is fully submitted and ready for decision.

### III.  PARTIES' ARGUMENTS

#### A.  The Movant

As a preliminary matter, the movant asserts that the Eighth Circuit Court of Appeals' resolution of the propriety of the undersigned's earlier determination that recusal was not justified does not impact this request for recusal.  He states that the Eighth Circuit Court of Appeals merely addressed: (1) the timeliness of his recusal request; (2) the standard that applies when a party is aware of the basis for recusal, such party does not seek recusal and the judge does not recuse sua sponte; and (3) the lack of any evidence showing bias or prejudice on the part of the court.  He emphasizes that the Eighth Circuit Court of Appeals addressed § 455(a), but it did not address: (1) whether the undersigned's personal knowledge of disputed evidentiary facts provides a basis for recusal under § 455(b)(1); (2) whether discovery regarding pre-enforcement action communications and pre-sentencing hearing communications will be permitted; (3) whether the connection between the undersigned and Bradshaw requires recusal; and (4) whether the totality of the circumstances, including the undersigned's personal knowledge of critical events, the nature of the pre-enforcement action communications and the pre-sentencing hearing communications, the arguable inconsistency of the accounts of the pre-enforcement action communications and the substantial criticism by prominent public and private individuals, would cause an average observer in possession of all the facts to question the undersigned's ability to remain impartial.

The movant argues that, because he conceded that his newly-discovered evidence probably would not result in an acquittal, the Eighth Circuit Court of Appeals had no need to address the timeliness of his recusal request and, therefore, its ruling is not the law of the case.  The movant maintains that none of the grounds in his motion pursuant to 28

U.S.C. § 2255 are procedurally barred because the government's failure to disclose information prevented him from raising issues in a timely and proper manner. He asserts that he deserves (1) an opportunity to litigate whether the government's partial disclosure caused defense counsel not to move for recusal sooner, that is, comports with constitutional obligations, and (2) an opportunity to explore whether the undersigned's involvement extended beyond permissible judicial boundaries, that is, violated his right to due process. Although he acknowledges that ground one of his motion pursuant to 28 U.S.C. § 2255 concerns an issue litigated during sentencing proceedings and ground two of his motion pursuant to 28 U.S.C. § 2255 concerns an issue litigated post-judgment, the movant claims that neither ground fails as a matter of law, he is entitled to raise new legal theories if they arise out of the same facts as his original grounds and glaring conflicts must be resolved during an evidentiary hearing.

As to waiver, the movant argues that a full disclosure on the record never occurred with respect to the pre-enforcement action communications, the pre-sentencing hearing communications and the involvement of Bradshaw in bankruptcy proceedings and any ground for disqualification under § 455(b) cannot be waived. He states that the government's partial disclosure regarding the undersigned's receipt of possible threats confused him and could lead a reasonable observer to question whether the undersigned imposed a longer sentence because she had a personal stake in the matter prior to the enforcement action. The movant opines that the undersigned may have been tempted to punish him because he was responsible for the undersigned's receipt of communications or because the undersigned viewed the potential threats as evidence that he and his supporters did not adequately respect the law.

The movant argues that disqualification is required under § 455(b)(1) because the undersigned has personal knowledge of disputed evidentiary facts, that is, of communications that occurred prior to the government's commencement of criminal proceedings against him. He states that, although the undersigned already made numerous

factual assertions in prior proceedings, the undersigned must disclose more so that a determination as to the appropriateness of the pre-enforcement action communications can be made. He contends that the undersigned's prior statements cannot be accepted at face value and another judge must develop the record, evaluate the nature and the substance of the pre-enforcement action communications and consider constitutional due process requirements.

Similarly, the movant maintains that disqualification is required because the undersigned has personal knowledge of pre-sentencing hearing communications. He states that the undersigned's receipt of information that included possible threats is properly characterized as information from an extrajudicial source and the undersigned's subsequent communications after receiving such information show that the undersigned and the government had a collaborative relationship. The movant emphasizes that the undersigned's recusal is required under § 455(b)(1) because the undersigned has personal knowledge that was obtained in an extrajudicial capacity.

Alternatively, the movant argues that disqualification is required under § 455(a) because the undersigned communicated with the government after receiving possible threats that were or appeared to be connected to the movant's case. He acknowledges that it is permissible to contact law enforcement officers and prosecutors who are assigned to investigate possible threats but contends that the undersigned impermissibly contacted the government because it was not assigned to investigate the possible threats. The movant argues that the cumulative effect of the pre-enforcement action communications, which the government never fully disclosed, and the pre-sentencing hearing communications, which the government never fully disclosed, require recusal. He maintains that the pre-sentencing hearing communications possibly shed light on the nature and meaning of the pre-enforcement action communications.

Additionally, concerning the pre-enforcement action communications and the pre-sentencing hearing communications, the movant argues that disqualification is required

under § 455(b)(5)(iv) because the undersigned is likely to be a material witness in this proceeding. He states that another judge must determine whether the government's failure to disclose all of the details concerning pre-enforcement action communications and pre-sentencing hearing communications violated his due process rights and, to assess the propriety of these communications, such judge will probably elect to expand the record by eliciting additional information from the undersigned.

Further, the movant asserts that the close connection between his prosecution, Bradshaw's effective representation of several entities during bankruptcy proceedings and matters that are raised in the instant proceeding require the undersigned's disqualification. The movant argues that it is appropriate to seek recusal even if the facts pertaining to Bradshaw's representation favor him. He also argues that matters addressed during bankruptcy proceedings influenced issues addressed during the sentencing hearing and recusal is required because it is possible that the undersigned obtained personal knowledge from her husband and/or the undersigned's husband had a financial interest in the subject matter in controversy or has another interest that could be substantially affected by the outcome of the proceeding.[7] He states that, by pursuing criminal forfeiture against Agriprocessors and the movant, the government threatened to reduce or completely eliminate the assets that could be used to pay Bradshaw or creditors, and he asserts that, by entering orders that dismissed Agriprocessors, the undersigned helped to ensure sufficient assets would exist to pay Bradshaw for its work. The movant also states that it is possible that the undersigned's husband received money from the movant's legal defense fund because it paid pre-petition fees to Bradshaw for work related to Nevel Properties Corporation.

In addition to relying on § 455(b)(1) and § 455(b)(4), the movant relies on § 455(a) when seeking disqualification based on the undersigned's connection to Bradshaw. He

---

[7] The movant did not rely on § 455(b)(4) in his motion to recuse. He, however, cited such provision in his reply.

argues that an appearance of impropriety arises because of Bradshaw's past representation and because at least one Bradshaw attorney continues to assist the movant with legal and factual matters and Bradshaw attorneys may be called to testify about their interactions with attorneys for the trustee who was appointed for Agriprocessors' bankruptcy. He asserts that Bradshaw attorneys probably possess material information, that is, information regarding whether the government improperly interfered with Agriprocessors. The movant states that Bradshaw already provided him with a memorandum and research that relates to the limits of the government's ability to seek criminal forfeiture during bankruptcy proceedings.

Citing § 455(a), the movant argues that the totality of the circumstances, including the pre-enforcement action communications, the pre-sentencing hearing communications and the involvement of Bradshaw in bankruptcy proceedings, create an appearance of partiality. He stresses that ex parte communications, predisposition based on extrajudicial interests or associations, lack of disclosure and facts obtained from extrajudicial sources coalesce to require the undersigned's recusal.

Aside from relying on the pre-enforcement action communications, the pre-sentencing hearing communications and the involvement of Bradshaw in bankruptcy proceedings, the movant contends that the government's assertion of a possible conflict of interest based on current counsel's knowledge of communications related to the investigation of possible threats against the undersigned by prosecutors in the Southern District of Iowa provides a basis to recuse. The movant asserts that, even though current counsel did not investigate the possible threats and no conflict exists, recusal is required because the government knows the investigation of possible threats contains information that is helpful to his case and the undersigned has personal knowledge of undisclosed facts.

Lastly, the movant asserts that the concerns expressed by prominent public and private individuals demonstrate that a disinterested observer would find recusal of the undersigned to be appropriate. The movant argues that, when informed that many eminent

members of the national community disapprove of events that are related to his case, the average man on the street would, at a minimum, harbor doubts as to the ability of the undersigned to impartially preside over the instant proceeding.

## B. The Government

The government generally contends that the movant waived the issue of disqualification because he knew about all of the grounds for disqualification years ago and did not assert them in a timely manner and, even if the merits of the grounds for disqualification are considered, there is no reason for the undersigned to recuse.  In support of such contentions, the government: (1) emphasizes that the enforcement action and subsequent prosecutions focused on illegal workers; (2) states that the pre-enforcement action communications did not reveal any persons or businesses being investigated and occurred months before the movant was charged; (3) contends that the movant is once again trying to litigate issues that have already been decided or could have been decided by the court and the Eighth Circuit Court of Appeals; and (4) argues that the movant is impermissibly using the recusal statute as a strategic weapon.

As to procedural issues, the government argues that, even though ground two of the motion pursuant to 28 U.S.C. § 2255 is framed as a *Brady* violation, the movant offers nothing new in support of his assertion that the pre-enforcement action communications required the undersigned to recuse under § 455(a) and does not assert that the undersigned has personal bias or prejudice concerning the movant.  It asserts that prior determinations made by the court and the Eighth Circuit Court of Appeals cannot be disturbed because the movant provides no reason why his regurgitated or reformulated arguments concerning the pre-enforcement action communications should be revisited.  The government also argues that, aside from being aware of the pre-enforcement action communications and waiting too long to assert them as a basis for seeking the undersigned's recusal, the movant's defense counsel knew about the pre-sentencing hearing communications and the connection between the undersigned and Bradshaw but decided not to raise them at an appropriate

point in the proceedings. The government maintains that the movant's request for recusal is untimely because he did not assert the bases for recusal at the earliest possible moment and the movant waived the issue of recusal because he made a conscious choice not to pursue it.

Additionally, as to the undersigned's preparations prior to the enforcement action and response to possible threats, the government asserts that the undersigned only carried out normal judicial responsibilities. The government maintains that, because the undersigned acted in a judicial capacity when communicating prior to the enforcement action and prior to the sentencing hearing, neither the pre-enforcement action communications nor the pre-sentencing hearing communications provide a basis to recuse under either § 455(a) or § 455(b) unless they demonstrate a deep-seated favoritism or antagonism that would make fair judgment impossible. The government states that, rather than show that a collaborative relationship existed between the undersigned and itself, the undersigned's email to law enforcement officials showed a concern about the progress of wholly separate investigations into distinct criminal acts. And, the government argues that the reporting of, investigation of and follow-up on the potential threats did not involve any conduct by the movant and, consequently, the movant cannot credibly assert that he should have been a part of the investigative proceedings.

The government emphasizes that the complained-of communications are unrelated to the movant and/or had little to do with the movant, and it asserts that none of the communications, either independently or collectively, establish either a reasonable appearance of partiality or any personal bias against the movant. With respect to the movant's reliance on the statements and opinions of others, the government contends that the law pertaining to disqualification only requires the judge sitting in the case to consider the facts. It states that nothing prevents the undersigned from drawing on the undersigned's own personal knowledge of proceedings, argues that the undersigned need not consider third-party opinions that find no support in the record and maintains that it is

inappropriate to allow publicized inferences of bias that are false to control disqualification decisions.

Concerning the judicial functions undertaken before the enforcement action and the sentencing hearing, the government states that there is no basis to conclude that it is likely that the undersigned will be a material witness in this proceeding. The government argues that the movant's allegations do not warrant a hearing and, therefore, disqualification under § 455(b)(5)(iv) is not required. With respect to ground two of the movant's motion pursuant to 28 U.S.C. § 2255, it emphasizes that: (1) *Brady* requires disclosure of information that is favorable to the accused and material to either guilt or punishment; (2) no *Brady* violation occurs if a defendant had sufficient access to the information in question; and (3) the Eighth Circuit Court of Appeals already rejected the movant's contentions relating to prosecutorial misconduct during pre-enforcement action meetings. Given those fatal issues, the government asserts that an evidentiary hearing is not necessary and the undersigned will not be a material witness in this proceeding.

With respect to Bradshaw's representation of several entities during bankruptcy proceedings, the government states that the facts relied on by the movant are more favorable to him, that is, the movant cites Bradshaw's effective representation in support of ground one of the motion pursuant to 28 U.S.C. § 2255, and it is unclear what provision of § 455 the movant is relying on to support his request for recusal. The government points out that Bradshaw's representation ended on July 16, 2010 so the movant cannot claim Bradshaw is currently providing representation or that any attorney of Bradshaw has any interest in the outcome of the proceeding. It also points out that: (1) the movant does not adequately allege that the undersigned's spouse took part in representing any business affiliated with the movant and, consequently, he will be a material witness in these proceedings and (2) the movant does not sufficiently allege that the undersigned's spouse learned of information concerning the movant's business affiliations and conveyed it to the

undersigned and, consequently, the undersigned has personal knowledge of disputed evidentiary facts.

In addition, the government contends that the connection between ground one and Bradshaw's representation of businesses affiliated with Agriprocessors is too attenuated to reasonably call into question the undersigned's impartiality. Aside from emphasizing that the movant does not identify any information that Bradshaw attorneys are privy to and that is relevant to ground one, the government contends that the movant knew about its position regarding criminal forfeiture and no violation of *Brady* occurred. The government states that any information that Bradshaw attorneys may possess has little, if any, bearing on these proceedings because it fully disclosed during bankruptcy proceedings and sentencing proceedings that it would reserve its criminal forfeiture rights unless an arms' length, good faith purchaser, who had no connection to either the current owners of Agriprocessors or the managers who were in place during the offenses, entered into a purchase agreement. The government emphasizes that the movant merely alleges that Bradshaw attorneys took part in bankruptcy proceedings and asserts that it is clear that recusal is not required where (1) a judge's spouse is a partner in a law firm that represents a litigant in matters other than the case before the judge and (2) the spouse did not perform any work at the law firm for the litigant or worked for the litigant on unrelated matters.

Finally, the government argues that the movant provides no legal authority in support of his assertion that a possible conflict of interest based on current counsel's knowledge of communications related to the investigation of possible threats against the undersigned by prosecutors in the Southern District provides a basis to recuse. It states that it believes current counsel properly addressed the possible conflict of interest and there is no dispute that needs to be resolved. And, the government contends that it acted pursuant to a professional obligation to alert the court to a potential conflict and the movant's speculative assertion that it raised the possibility of a conflict because it is trying

to conceal something helpful to the movant's case does not require the undersigned's recusal.

## IV. ANALYSIS

### A. Standards Governing Disqualification

Litigants certainly have a constitutional right to have "a neutral and detached judge" preside over their matters. *Ward v. Village of Monroeville*, 409 U.S. 57, 62 (1972).

> A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. . . . [H]owever, "[e]very procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law." *Tumey v. Ohio*, 273 U.S. 510, 532 [(1927)]. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice." *Offut v. United States*, 348 U.S. 11, 14 [(1954)].

In re *Murchison*, 349 U.S. 133, 136 (1955) (parallel citations omitted); *accord Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821-25 (1986). While courts, of course, must ever be concerned with preserving the integrity of the judicial process, "most matters relating to judicial disqualification [do] not rise to a constitutional level." *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876 (2009) (quoting *FTC v. Cement Institute*, 333 U.S. 683, 702 (1948)) (alteration in original); *see also Bracy v. Gramley*, 520 U.S. 899, 904 (1997) ("[M]ost questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard."). The "more rigorous standard" of

demonstrating a violation of the constitutional right to an impartial judge is not met if relevant statutory provisions do not require recusal. *See United States v. Larsen*, 427 F.3d 1091, 1095 (8th Cir. 2005) (citing *United States v. Sypolt*, 346 F.3d 838, 840 (8th Cir. 2003)).

The disqualification or recusal of federal judges is governed by 28 U.S.C. § 455. Such statute, in pertinent part, provides:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> > (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> >
> > . . .
> >
> > (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
> >
> > (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such person:
> >
> > > (i) Is a party to the proceeding, or an officer, director, or trustee of a party;
> > >
> > > (ii) Is acting as a lawyer in the proceeding;
> > >
> > > (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

          (iv)     Is to the judge's knowledge likely to be a
                     material witness in the proceeding.

28 U.S.C. § 455(a), (b)(1), (b)(4) & (b)(5).

Congress enacted subsection (a) to "promote public confidence in the integrity of the judicial process." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988). So, "what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). In contrast to subsection (a) of 28 U.S.C. § 455, which operates as a "catchall" provision, subsection (b) addresses specific scenarios where recusal is required. *Liteky*, 510 U.S. at 548; *see also id.* at 553 n.2 (noting that "subsection (a) has a 'broader reach' than subsection (b)"). However, a limitation contained in subsection (b) similarly limits subsection (a). *Id.* at 553-54.

> [Section] 455(a) expands the protection of § 455(b), but duplicates some of its protection as well—not only with regard to bias and prejudice but also with regard to interest and relationship. Within the area of overlap, it is unreasonable to interpret § 455(a) (unless the language requires it) as implicitly eliminating a limitation explicitly set forth in § 455(b). It would obviously be wrong, for example, to hold that "impartiality could reasonably be questioned" simply because one of the parties is in the fourth degree of relationship to the judge. Section 455(b)(5), which addresses the matter of relationship specifically, ends the disability at the third degree of relationship, and that should obviously govern for purposes of § 455(a) as well.

*Id.* (emphasis omitted).

The determination under § 455(a) is not mechanical. Such provision requires a judge to "carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his [or her] impartiality might be seeking to avoid the adverse consequences of his [or her] presiding over their case." In re *Kan. Pub. Emp. Ret. Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996) (quoting In re *Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988)); *see also Belue v. Leventhal*, 640 F.3d 567, 574

(4th Cir. 2011) ("[Decisions to recuse] reflect not only the need to secure public confidence through proceedings that appear impartial, but also the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." (quoting In re *United States*, 441 F.3d 44, 67 (1st Cir. 2006) (internal quotation marks and citations omitted)); In re *Boston Children's First*, 244 F.3d 164, 167 (1st Cir. 2001) (stating that 28 U.S.C. § 455 "seeks to balance two competing policy considerations"—"that courts must not only be, but seem to be, free of bias or prejudice" and "that recusal on demand would provide litigants with a veto against unwanted judges" (quoting In re *United States*, 158 F.3d 26, 30 (1st Cir. 1998) (quotation marks omitted)); In re *Cargill, Inc.*, 66 F.3d 1256, 1262-63 (1st Cir. 1995) ("In the real world, recusal motions are sometimes driven more by litigation strategies than by ethical concerns."). Further, "a judge has as strong a duty to sit when there is no legitimate reason to recuse as he [or she] does to recuse when the law and facts require." *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995); *see also* In re *Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001) ("[W]here the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited."); *United States v. Snyder*, 235 F.3d 42, 45 (1st Cir. 2000) ("Judges are not to recuse themselves lightly under § 455(a)."); *Sw. Bell Tel. Co. v. FCC*, 153 F.3d 520, 523 (8th Cir. 1998) (explaining that judges are obligated not to remove themselves needlessly); *United States v. Greenspan*, 26 F.3d 1001, 1005 (10th Cir. 1994) ("[A] judge has as much obligation not to recuse himself where there is no reason to do so as he does to recuse himself when the converse is true."); *New York City Housing Dev. Corp. v. Hart*, 796 F.2d 976, 980-81 (7th Cir. 1986) (making clear that a judge's obligation to refrain from recusal when no ground for disqualification exists is as strong as the obligation to recuse upon a proper showing); *Walker v. Bishop*, 408 F.2d 1378, 1382 (8th Cir. 1969) (stating that a judge's duty not to recuse when unwarranted is just as important as a judge's duty to recuse when required).

"Under § 455(a), a judge is under a continuing duty to ask himself [or herself] what a reasonable person, knowing all the relevant facts, would think about his [or her] impartiality." *Greenspan*, 26 F.3d at 1005 (quoting *United States v. Hines*, 696 F.2d 722, 728 (10th Cir. 1982)); *see also United States v. Heldt*, 668 F.2d 1238, 1271 (D.C. Cir. 1981) ("Section 455 . . . imposes a duty directly upon the judge to evaluate his [or her] own conduct . . . ."). Disqualification is required if a reasonable factual basis exists for doubting the judge's impartiality. *See United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989) ("[A] judge is under an affirmative, self-enforcing obligation to recuse himself *sua sponte* whenever the proper grounds exist."); *United States v. Gipson*, 835 F.2d 1323, 1325 (10th Cir. 1988) ("The statute imposes a *sua sponte* duty upon the judge to recuse himself if there is a reasonable factual basis for doubting the judge's impartiality."). The inquiry is objective, that is, from the point of view of a reasonable person with access to all of the facts as they existed, not as they were surmised or reported. *See Cheney v. United States Dist. Ct. for Dist. of Columbia*, 541 U.S. 913, 914 (2004) (citing *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000)); *see also United States v. Martinez*, 446 F.3d 878, 883 (8th Cir. 2006) ("Section 455(a) provides an objective standard of reasonableness."); *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993) ("The inquiry is limited to outward manifestations and reasonable inferences drawn therefrom.").

Whether a judge actually has a bias or actually knows of grounds requiring recusal is irrelevant because the objective standard does not require scienter. *Liljeberg*, 486 U.S. at 859-60; *see also United States v. Tucker*, 78 F.3d 1313, 1325 (8th Cir. 1996) ("Section 455(a) 'was designed to promote public confidence in the integrity of the judicial process by replacing the subjective "in his opinion" standard with an objective test.'" (quoting *Liljeberg*, 486 U.S. at 858 n.7)). So, the test is "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." In re *Kan. Pub. Emp. Ret. Sys.*, 85 F.3d at 1358; *see also United States v. Melton*, 738 F.3d 903, 905-06 (8th Cir. 2013) (reiterating standard); *Sentis Grp., Inc.*

*v. Shell Oil Co.*, 559 F.3d 888, 905 (8th Cir. 2009) (explaining that recusal is required if a reasonable person who knows all the circumstances "would harbor doubts about the judge's impartiality"); *O'Bannon v. Union Pac. R.R. Co.*, 169 F.3d 1088, 1091 (8th Cir. 1999) ("Would the average person, knowing the facts alleged by the parties seeking disqualification, question the [j]udge's impartiality, and, if so, would the question be reasonable?"); *Tucker*, 78 F.3d at 1324 ("[The test is whether] 'a reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown.'" (quoting *Gray v. Univ. of Ark.*, 883 F.2d 1394, 1398 (8th Cir. 1989))); *United States v. Darden*, 70 F.3d 1507, 1536 (8th Cir. 1995) ("The test is one of objective reasonableness, that is, whether the judicial officer's impartiality might reasonably be questioned under the circumstances." (quoting *Lunde v. Helms*, 29 F.3d 367, 370 (8th Cir. 1994))).[8] And, it is important to keep in mind that reasonable persons

---

[8] The formulation of the test by other courts is similar. *See, e.g.*, In re *Nettles*, 394 F.3d 1001, 1002 (7th Cir. 2005) (framing the test as whether "a reasonable observer would think there was 'a significant risk that the judge will resolve the case on a basis other than the merits'" (quoting *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996))); *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 484 (5th Cir. 2003) ("[A court] must consider 'whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality.'" (quoting In re *Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997)) (emphasis omitted)); *United States v. Yousef*, 327 F.3d 56, 169 (2d Cir. 2003) (formulating the test as "whether 'an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal,' or alternatively, whether 'a reasonable person, knowing all the facts,' would question the judge's impartiality" (quoting *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992))); *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) ("The standard . . . requires the court to ask 'whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality.'" (quoting *McWhorter v. City of Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990))); *United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998) ("[The] objective standard asks whether the judge's impartiality might be questioned by a reasonable, well-informed observer who assesses all the facts and circumstances." (internal quotations omitted));

(continued…)

"'are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be.'" In re *Nettles*, 394 F.3d at 1002 (quoting In re *Mason*, 916 F.2d 384, 386 (7th Cir. 1990)).

Typically, a judge's partiality must be based on either information obtained from an extrajudicial source or a predisposition developed from an extrajudicial source. *See United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) ("The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."); *Hale v. Firestone Tire and Rubber Co.*, 756 F.2d 1322, 1329 (8th Cir. 1985) ("Facts learned by a judge in his judicial capacity cannot be the basis for disqualification."); *United States v. Rosenberg*, 806 F.2d 1169, 1173 (3d Cir. 1986) ("[T]he alleged bias or prejudice must stem from an extrajudicial source rather than from facts which the judge has learned from his participation in the case."). A source outside the judicial process, however, is not a necessary prerequisite "since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice." *Liteky*, 510 U.S. at 554. The critical inquiry is whether there is a reasonable question as to whether a judge has a predisposition towards a party that is wrongful or inappropriate because it is undeserved, is excessive in degree or rests upon knowledge that the judge ought not to possess. *Id*. at 550; *see also United States v. Burnette*, 518 F.3d 942, 945 (8th Cir. 2008) ("Rules against bias and partiality can never mean to require total absence of preconception, predispositions and other mental habits." (internal quotation omitted)). Judicial rulings or opinions that are formed on the basis of facts introduced in the course of a judicial proceeding will "almost never" provide a basis for recusal. *Liteky*, 510 U.S.

---

[8](…continued)
*Nichols*, 71 F.3d at 350-51 ("Given the statutory parameters, we must determine whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." (internal quotation marks and citations omitted)).

at 555; *see also Harris v. Missouri*, 960 F.2d 738, 740 (8th Cir. 1992) ("An unfavorable judicial ruling . . . does not raise an inference of bias or require the trial judge's recusal."). It is improper for a judge to sit only if rulings "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555; *see also Dossett v. First State Bank*, 399 F.3d 940, 953 (8th Cir. 2005) (emphasizing standard); *Sypolt*, 346 F.3d at 839 ("[W]here a judge's opinions are based on 'facts introduced or events occurring in the course of the current proceedings,' those opinions warrant recusal under § 455(a) only if they 'display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" (quoting *Liteky*, 510 U.S. at 555)).

Additionally, "[d]espite the sweeping language of 28 U.S.C. § 455(a), . . . the statute does not extend literally to any kind of doubtful behavior." *Sypolt*, 346 F.3d at 839. Moreover, it is clear that unreasonable and conclusory allegations fail to provide a basis for recusal under § 455(a). *See Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 129 (2d Cir. 2003) ("[A] danger of an incautious use of appearance as a disqualifying factor is that a suspicious appearance of partiality can be manufactured by inspiring publicity of repeated claims of bias. A truly disqualifying appearance must thus be determined by a reasonable person standard and not by the ability of the complaining party to voice its concerns through the media."); *Patterson*, 335 F.3d at 484 (stating that a reasonable person would temper his or her inclination to presume bias when considering all of the relevant facts, which includes the timing of events); In re *Boston's Children First*, 244 F.3d at 167 (emphasizing that disqualification is appropriate only when the charge of partiality is "supported by a factual basis[] and when the facts asserted 'provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality'" (quoting In re *United States*, 666 F.2d 690, 695 (1st Cir. 1981))); *DeTemple*, 162 F.3d at 287 (articulating that the facts are not to be considered through the prism of a "person unduly suspicious or concerned about a trivial

33

risk that a judge may be biased"); *Nichols*, 71 F.3d at 351 (emphasizing that the statute cannot be construed so as to mandate recusal "upon the merest unsubstantiated suggestion of personal bias or prejudice" (quoting *Cooley*, 1 F.3d at 993)); *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995) (observing that a court should ask "how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical and suspicious person"); *Gen. Aviation v. Cessna Aircraft Co.*, 915 F.2d 1038, 1043 (6th Cir. 1990) ("[C]onclusions, rumors, beliefs, and opinions are not sufficient to form a basis for disqualification." (quoting *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987)) (alteration in original)); *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986) ("'[A] judge considering whether to disqualify himself [or herself] must ignore rumors, innuendoes, and erroneous information published as fact . . . .'" (quoting In re *United States*, 666 F.2d at 695)). Further, "cases within § 455 are extremely fact driven 'and must be judged on [their] unique facts and circumstances more than by comparison to situations considered in prior jurisprudence.'" *Nichols*, 71 F.3d at 351 (quoting *Jordan*, 49 F.3d at 157); *accord United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008). Nonetheless, "various matters not ordinarily sufficient to require § 455(a) recusal" include the following:

> (1) Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters; (2) the mere fact that a judge has previously expressed an opinion on a point of law or has expressed a dedication to upholding the law or a determination to impose severe punishment within the limits of the law upon those found guilty of a particular offense; (3) prior rulings in the proceeding, or another proceeding, solely because they were adverse; (4) mere familiarity with the defendant(s), or the type of charge, or kind of defense presented; (5) baseless personal attacks on or suits against the judge by a party; (6) reporters' personal opinions or characterizations appearing in the media, media notoriety, and reports in the media purporting to be factual, such as quotes attributed to the judge or others, but which are in fact

34

false or materially inaccurate or misleading; and (7) threats or
other attempts to intimidate the judge.

*Nichols*, 71 F.3d at 351 (quoting *Cooley*, 1 F.3d at 993-94).

## B. Procedural Obstacles

### 1. Continuation of criminal proceedings and scope of instant proceedings

Proceedings under 28 U.S.C. § 2255 are intended to correct sentences erroneously imposed by the court; they are a further step in a criminal case. *See Wall v. Kholi*, 562 U.S. 545, 559 (2011) (observing that collateral proceedings, including § 2255 proceedings, are often regarded as part of the criminal case); *Reed v. Farley*, 512 U.S. 339, 361 n.4 (1994) (Blackmun, J., dissenting) (noting that " § 2255 requires a prisoner to file his motion in the court that imposed his sentence as a further step in his criminal case, not as a separate civil action") (citing Advisory Committee's Note on Rule 1 of the Rules Governing Section 2255 Proceedings); *United States v. Frady*, 456 U.S. 152, 178-79 (1982) (Brennan, J., dissenting) (pointing out that "the *criminal* character of a proceeding under § 2255 as distinguished from the *civil* character of a proceeding under 28 U.S.C. § 2254" should not be overlooked); *United States v. Thomas*, 713 F.3d 165, 171-74 (3d Cir. 2013) (explaining that, although civil in some respects, it is clear that proceedings under § 2255 are "a continuation of the underlying criminal case"); *see also Brown v. United States*, 748 F.3d 1045, 1049 n.7, 1058-65 (11th Cir. 2014) (determining that motions filed under § 2255 could be considered civil in nature but a magistrate judge lacks the authority to enter final judgment under 28 U.S.C. § 626(c)); *White v. Thaler*, 610 F.3d 890, 895-96 (5th Cir. 2010) (reiterating that consensual delegation of § 2255 motions to magistrate judges violates Article III); *United States v. Simmonds*, 111 F.3d 737, 742-43 (10th Cir. 1997) (overruled on other grounds) (concluding that habeas proceedings and § 2255 proceedings were not "civil actions" for purposes of 28 U.S.C. § 1915). And, "a section 2255 petition ordinarily must be brought before the trial judge" because such "judge has a unique knowledge of what transpired at trial and of what effect errors may have had."

*Ellis v. United States*, 313 F.3d 636, 647 (1st Cir. 2002); *see also Wall*, 562 U.S. at 560 (stating that "a motion under 28 U.S.C. § 2255 is entered on the docket of the original criminal case and is typically referred to the judge who originally presided over the challenged proceedings") (citing Rule 3(b) and Rule 4(a) of the Rules Governing Section 2255 Proceedings); *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (observing that it is advantageous to have an order from a judge who "is uniquely familiar with the overall circumstances of the original case"). To disqualify a judge because of the fact that he or she has such knowledge would defeat one of the purposes for which Congress passed 28 U.S.C. § 2255. *See Panico v. United States*, 412 F.2d 1151, 1155-56 (2d Cir. 1969).

The movant contends that a proceeding under 28 U.S.C. § 2255 has no history and is a new, independent case. Such contention is belied by case law and the Rules Governing Section 2255 Proceedings.[9] As relevant legal authority indicates, there are good reasons to have the same judge continue to preside in collateral matters. And, absolutely nothing in the record undermines the basic notion that it is best to have a judge who is familiar with the overall circumstances of the original case preside in subsequent proceedings. *See United States v. Smith*, 337 F.2d 49, 51 (4th Cir. 1964) (stating that "it is highly desirable . . . [to have] the judge who is familiar with the facts and circumstances surrounding the trial [decide the motion because he or she is] not likely to be misled by false allegations

---

[9] When advancing his position, the movant cites a case that is consistent with the Supreme Court's prior view that a § 2255 motion was a separate civil action. *See Andrews v. United States*, 373 U.S. 334, 338 (1963) (stating that "[a]n action under 28 U.S.C. § 2255 is a separate proceeding, independent of the original criminal case," and subsection (d) of the statute itself, rather than the Criminal Appeals Act, allows an appeal to be taken from the order entered on the motion); *see also United States v. Hayman*, 342 U.S. 205, 222 (1952) ("[A] proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction."). The movant, however, does not recognize that the Supreme Court abandoned such view when it promulgated the Rules Governing Section 2255 Proceedings. *See Thomas*, 713 F.3d at 173.

as to what occurred"); *see also id.* at 53 (opining that 28 U.S.C. § 2255 and 28 U.S.C. 455 should be read together and the latter cannot be read to require disqualification because a judge is familiar with the proceedings).

Relatedly, there is no right to automatic discovery where a movant seeks relief under 28 U.S.C. § 2255. *See Bracy*, 520 U.S. at 904 ("[U]nlike the usual civil litigant in federal court, [a movant] is not entitled to discovery as a matter of ordinary course."). The Rules Governing Section 2255 Proceedings afford the court discretion when deciding whether to permit discovery. Specifically, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Rule 6(a) of the Rules Governing Section 2255 Proceedings. In addition, the Rules Governing Section 2255 Proceedings make clear that a party requesting discovery must provide reasons for the request. *See* Rule 6(b) of the Rules Governing Section 2255 Proceedings. When determining whether "good cause" exists, the court must identify the "essential elements" of the claim that is asserted, *Bracy*, 520 U.S. at 904, and then evaluate whether the "specific allegations before the court show reason to believe that [the movant] may, if the facts are fully developed, be able to demonstrate that [relief is warranted]," *id.* at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *see also United States v. Roane*, 378 F.3d 382, 402-03 (4th Cir. 2004) (discussing applicable standard). The burden to establish "good cause" rests with the moving party, and such party's factual allegations must be specific to justify discovery. *See generally Williams v. Beard*, 637 F.3d 195, 209-11 (3d Cir. 2011); *Teti v. Bender*, 507 F.3d 50, 60 (1st Cir. 2007); *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001); *Murphy v. Johnson*, 205 F.3d 809, 813-14 (5th Cir. 2000); *Rich v. Calderon*, 187 F.3d 1064, 1067-68 (9th Cir. 1999). Stated differently, Rule 6 of the Rules Governing Section 2255 Proceedings does not authorize a "fishing expedition." *Rich*, 187 F.3d at 1067.

The movant maintains that discovery, especially concerning pre-enforcement action communications, is essential to resolution of ground two of his motion pursuant to 28 U.S.C. § 2255. But, the movant is seeking a fishing license. He points to no evidence that indicates anything the undersigned or the government did or did not do prior to the enforcement action violated his fundamental rights. Rather than point to evidence, the movant asserts that discovery will enable him to determine whether a due process violation occurred, that is, discovery will allow him to find errors. But, the movant must allege specific facts which, if true, would provide a basis for relief. He has not done so. Because the movant is merely proposing to address an imagined concern, neither discovery nor a hearing is required with respect to the pre-enforcement action communications.

Moreover, to obtain relief pursuant to 28 U.S.C. § 2255, a federal prisoner must establish: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "[that the judgment or sentence] is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see also Hill v. United States*, 368 U.S. 424, 426-27 (1962) (listing four grounds upon which relief under 28 U.S.C. § 2255 may be claimed); *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) (same); *Lee v. United States*, 501 F.2d 494, 499-500 (8th Cir. 1974) (clarifying that subject matter jurisdiction exists over enumerated grounds within the statute); Rule 1 of the Rules Governing Section 2255 Proceedings (specifying scope of 28 U.S.C. § 2255). If any one of the four grounds is established, the court is required "to vacate and set the judgment aside and . . . discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

Although it appears to be broad, 28 U.S.C. § 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quoting *United States v. Addonizio*, 442 U.S. 178, 185

(1979)). Rather, 28 U.S.C. § 2255 is intended to redress constitutional and jurisdictional errors and, apart from those errors, only "fundamental defect[s] which inherently [result] in a complete miscarriage of justice" and "omission[s] inconsistent with the rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428; *see also Sun Bear*, 644 F.3d at 704 (clarifying that the scope of 28 U.S.C. § 2255 is severely limited and quoting *Hill*, 368 U.S. at 428); *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." (citing *Poor Thunder v. United States*, 810 F.2d 817, 821 (8th Cir. 1987))). A collateral challenge under 28 U.S.C. § 2255 is not interchangeable or substitutable for a direct appeal. *See Frady*, 456 U.S. at 165 (making clear that a motion pursuant to 28 U.S.C. § 2255 will not be allowed to do service for an appeal). Consequently, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (quoting *Addonizio*, 442 U.S. at 184).

The movant ignores a further and deeper problem that encompasses these proceedings. Aside from laboring under the mistaken assumption that this is an entirely independent action with no history, the movant misunderstands the scope of proceedings under 28 U.S.C. § 2255. Any entitlement to collateral relief is severely limited. These proceedings are not a substitute for earlier proceedings, and, consequently, the movant cannot reformulate arguments, reconstruct the record or relitigate issues that have already been decided.

### 2. *Litigation bars*

The law of the case doctrine has two branches. *See Ellis v. United States*, 313 F.3d 636, 646 (1st Cir. 2002). The first branch involves the "mandate rule (which, with only a few exceptions, forbids, among other things, a lower court from relitigating issues that were decided by a higher court, whether explicitly or by reasonable implication, at an

earlier stage of the same case)," and the second branch, which is somewhat more flexible, provides that "a court ordinarily ought to respect and follow its own rulings" throughout subsequent stages of the same litigation. *Id.*; *see also United States v. Bloate*, 655 F.3d 750, 755 (8th Cir. 2011) ("The [law of the case] doctrine applies only to actual decisions—not dicta—in prior stages of the case."); *Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599, 602 (8th Cir. 1995) ("Law of the case applies only to issues actually decided, either implicitly or explicitly, in the prior stages of a case."). "[R]ulings are the law of the case and will not be disturbed absent an intervening change in controlling authority." *Baranski v. United States*, 515 F.3d 857, 861 (8th Cir. 2008); *see also Davis v. United States*, 417 U.S. 333, 342 (1974) (observing that law of the case did not preclude relief under 28 U.S.C. § 2255 because of intervening change in the law).

So, in collateral proceedings based on 28 U.S.C. § 2255, "[i]ssues raised and decided on direct appeal cannot ordinarily be relitigated." *United States v. Wiley*, 245 F.3d 750, 751 (8th Cir. 2001) (citing *United States v. McGee*, 201 F.3d 1022, 1023 (8th Cir. 2000)); *see also Lefkowitz v. United States*, 446 F.3d 788, 790-91 (8th Cir. 2006) (concluding that the same issues that have been raised in a new trial motion and decided by the district court cannot be reconsidered in a subsequent collateral attack); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003) ("It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." (quoting *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981))); *Dall v. United States*, 957 F.2d 571, 572-73 (8th Cir. 1992) (per curiam) (concluding that claims already addressed on direct appeal could not be raised); *United States v. Kraemer*, 810 F.2d 173, 177 (8th Cir. 1987) (concluding that a movant could not "raise the same issues . . . that have been decided on direct appeal or in a new trial motion"); *Butler v. United States*, 340 F.2d 63, 64 (8th Cir. 1965) (concluding that a movant was not entitled to another review of his question). With respect to a claim that has already been conclusively resolved on direct appeal, the court may only consider the

same claim in a collateral action if "convincing new evidence of actual innocence" exists. *Wiley*, 245 F.3d at 752 (citing cases and emphasizing the narrowness of the exception).

Further, movants ordinarily are precluded from asserting claims that they failed to raise on direct appeal. *See McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001); *see also Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam) (citing *Frady*, 456 U.S. at 167-68, for the proposition that a movant is not able to rely on 28 U.S.C. § 2255 to correct errors that could have been raised at trial or on direct appeal); *United States v. Samuelson*, 722 F.2d 425, 427 (8th Cir. 1983) (concluding that a collateral proceeding is not a substitute for a direct appeal and refusing to consider matters that could have been raised on direct appeal). "A [movant] who has procedurally defaulted a claim by failing to raise it on direct review may raise that claim in a [28 U.S.C. §] 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence." *McNeal*, 249 F.3d at 749 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the [movant] shows cause and prejudice."). "'[C]ause' under the cause and prejudice test must be something *external* to the [movant], something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). If a movant fails to show cause, a court need not consider whether actual prejudice exists. *See McCleskey v. Zant*, 499 U.S. 467, 501 (1991). Actual innocence under the actual innocence test "means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623; *see also McNeal*, 249 F.3d at 749 ("[A movant] must show factual innocence, not simply legal insufficiency of evidence to support a conviction."). To establish actual innocence, a movant "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable

juror would have convicted him." *Bousley*, 523 U.S. at 623 (citation omitted) (internal quotation marks omitted).[10]

It is clear that 28 U.S.C. § 2255 does not authorize the judge who presided over earlier proceedings to revisit or revise his or her decisions. And, issues resolved on direct appeal may not be reviewed again by way of a § 2255 motion. *See Ellis*, 313 F.3d at 646-48 (explaining that the concerns underpinning the law of the case doctrine are heightened when the challenge arises on collateral attack of a criminal conviction). Here, there is no mistaking that the movant previously sought the undersigned's recusal under § 455 and the undersigned and the Eighth Circuit Court of Appeals already thoroughly addressed the propriety of the pre-enforcement action communications. Indeed, before this court and the Eighth Circuit Court of Appeals, the movant asserted various recusal arguments, including but not limited to: (1) whether the pre-enforcement action communications compromised the fairness of the trial; (2) whether the conduct of the undersigned and the government undermined confidence in the outcome of the proceedings; (3) whether disqualification was required because the undersigned's impartiality might reasonably be questioned by the average person on the street who knows all of the relevant facts of a case and reversal was required because prosecutorial misconduct deprived him of a fair trial; (4) whether § 455 provides retrospective or prospective relief, that is, prevents a judge from participating in past proceedings or future proceedings; (5) whether further record development, including additional discovery, by another judge should be permitted; and (6) whether appellate relief should be granted because the undersigned participated in ex parte meetings, gained knowledge about the government's investigation and performed prosecutorial functions. Because the movant is raising the same issues that he previously raised in his motion for

---

[10] The procedural default rule applies to a conviction obtained through trial or through the entry of a guilty plea. *See, e.g.*, *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997); *Thomas v. United States*, 112 F.3d 365, 366 (8th Cir. 1997); *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992).

a new trial and on direct appeal and this court and the Eighth Circuit Court of Appeals conclusively determined that the facts did not give rise to an obligation to recuse, the movant's arguments concerning the pre-enforcement action communications cannot be reconsidered.

Further, to the extent that the movant believes that he should be afforded another opportunity to challenge whether the government failed to disclose information concerning pre-enforcement action communications and whether such failure caused defense counsel to untimely seek the undersigned's disqualification based on due process principles, the law does not permit such errors to be reviewed in these proceedings. The Eighth Circuit Court of Appeals already addressed whether pre-enforcement action communications required the undersigned to recuse under § 455(a), and, when it determined that such provision did not require recusal, it necessarily found that the movant did not demonstrate a violation of his constitutional right to an impartial judge. *See Larsen*, 427 F.3d at 1095. During either trial proceedings or appellate proceedings, the movant could have relied on any provision of § 455 or more forcefully argued his due process concerns. Because nothing prevented the movant from raising his reformulated due process concerns or relying on other statutory provisions on direct appeal, the movant is procedurally barred from raising them in this proceeding unless he can establish cause and prejudice. He has not done so. Consequently, the movant is precluded from asserting arguments based on the pre-enforcement action communications. *See Molina v. Rison*, 886 F.2d 1124, 1131-32 (9th Cir. 1989) (holding that the issue of recusal was procedurally defaulted because defense counsel, if not the movant himself, was aware of the grounds for recusal but did not raise them during pretrial proceedings).

Likewise, the movant is unable to rely on other circumstances, such as the movant's retention of lawyers affiliated with Bradshaw and the undersigned's receipt of possible threats, to obtain relief. Although he could have argued that those circumstances demonstrated bias or a lack of impartiality, the movant did not do so. Because he had the

ability to raise either basis in post-judgment proceedings or appellate proceedings and did not do so, the movant cannot raise them now. *See United States v. Brice*, 748 F.3d 1288, 1289-90 (D.C. Cir. 2013) (concluding that defendant did not properly raise ex parte communication at sidebar as a basis for recusal).

### 3. Timeliness

There is a timeliness requirement under 28 U.S.C. § 455. *See Kolon Indus., Inc. v. E.I. du Pont de Nemours & Co.*, 748 F.3d 160, 168-70 (4th Cir. 2014) (concluding that 28 U.S.C. § 455(a) and 28 U.S.C. § 455(b) include timely-filing requirements); *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 432 (4th Cir. 2011) (stating that timeliness is "an essential element of a recusal motion" (quoting *United States v. Whorley*, 550 F.3d 326, 339 (4th Cir. 2008))); *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 794 (2d Cir. 2002) (reiterating that there is a timeliness requirement under § 455); *Tri-State Fin., LLC v. Lovald*, 525 F.3d 649, 653 (8th Cir. 2008) ("Motions for recusal under 28 U.S.C. § 455 'will not be considered unless timely made.'" (quoting *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003))); In re *Kan. Pub. Emp. Ret. Sys.*, 85 F.3d at 1360 (same); *United States v. Bauer*, 19 F.3d 409, 414 (8th Cir. 1994) (same); *Cooley*, 1 F.3d at 993 (reiterating that a motion to recuse must be timely filed); *United States v. Owens*, 902 F.2d 1154, 1155 (4th Cir. 1990) ("Timeliness is an essential element of a recusal motion."); *United States v. York*, 888 F.2d 1050, 1053-55 (5th Cir. 1989) (explaining that timeliness is different from waiver and determining that subsection (a) and subsection (b) of 28 U.S.C. § 455 have a timeliness requirement). A prompt request for recusal allows a judge to assess the merits of the request before taking further steps that may be inappropriate, avoids the risk that a party is holding back a recusal application in the event of adverse rulings on pending matters and discourages unproductive investments of judicial resources. *See United States v. Williams*, 624 F.3d 889, 894 (8th Cir. 2010) (emphasizing that 28 U.S.C. § 455(a) does not provide a vehicle for parties to shop among judges) (citing *United States v. Urben-Potratz*, 470 F.3d 740,

745 (8th Cir. 2006) and *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 839 F.2d 1296, 1302 (8th Cir. 1988)); *Summers v. Singletary*, 119 F.3d 917, 921 (11th Cir. 1997) (explaining that a timeliness requirement prevents a party from lying in wait and raising the issue only after the court's ruling); In re *IBM Corp.*, 45 F.3d 641, 643 (2d Cir. 1995) (explaining that promptness is important because it affords the judge an "opportunity to assess the merits of [a request for recusal] before taking any further steps that may be inappropriate" and "avoids the risk that a party is holding back a [request for recusal] as a fall-back position in the event of adverse rulings on pending matters"); In re *Anwiler*, 958 F.2d 925, 930 (9th Cir. 1992) (observing that waiting to file a motion to disqualify "raises the spectre of judge shopping"); *Preston v. United States*, 923 F.2d 731, 732-33 (9th Cir. 1991) (observing that recusal motions must be "lodged in a timely fashion because the absence of such a requirement would result in increased instances of wasted judicial time and resources . . . and a heightened risk that litigants would use recusal motions for strategic purposes . . ."); *Jones v. Pittsburgh Nat. Corp.*, 899 F.2d 1350, 1356 (3d Cir. 1990) (concluding that motion to recuse could not be considered timely because "[a]ny other conclusion would permit a party to play fast and loose with the judicial process by 'betting' on the outcome"); *Sine v. Local No. 992 Int'l Bhd. of Teamsters*, 882 F.2d 913, 916 (4th Cir. 1989) (observing that it is inappropriate to permit "a party to gather evidence of a judge's possible bias and then wait and see if the proceedings went his way before using the information to seek recusal"); *United States v. Durrani*, 835 F.2d 410, 427 (2d Cir. 1987) (asserting that a motion to disqualify must be timely "to safeguard both the judiciary from frivolous attacks upon its dignity and the court system from last-minute dilatory tactics"); *Delesdernier v. Porterie*, 666 F.2d 116, 121 (5th Cir. 1982) ("Lack of a timeliness requirement encourages speculation and converts the serious and laudatory business of insuring judicial fairness into a mere litigation strategem. Congress did not enact § 455(a) to allow counsel to make a game of the federal judiciary's ethical obligations; we should seek to preserve the integrity of the statute by

discouraging bad faith manipulation of its rules for litigious advantage."). A party must file a motion to recuse with reasonable promptness after discovering the ground on which recusal is based. *See Whorley*, 550 F.3d at 339 (emphasizing that, in order to "prevent inefficiency and delay, motions to recuse must be filed at the first opportunity after discovery of the facts tending to prove disqualification" (quoting *Sine*, 882 F.2d at 915)); *Summers*, 119 F.3d at 920-21 (concluding that a motion to disqualify under 28 U.S.C. § 455(b) must be filed within a reasonable time after the grounds for the motion are ascertained); *Miller v. Tony & Susan Alamo Found.*, 924 F.2d 143, 146 (8th Cir. 1991) (stating that a party must "make its motion and facts known at the earliest possible time"); *Sine*, 882 F.2d at 915-16 (emphasizing that a recusal motion must be made at the "first opportunity after discovery of the facts tending to prove disqualification"); *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987) (stating that a party must raise its claim of disqualification at the earliest possible moment after obtaining knowledge of the facts demonstrating the basis for such a claim); *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986) (noting that "a motion for recusal filed weeks after the conclusion of . . . trial is presumptively untimely absent a showing of good cause for its tardiness"); *United States v. Patrick*, 542 F.2d 381, 390 (7th Cir. 1976) ("The law is well settled that one must raise the disqualification of the judge at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification."); *see also Liljeberg*, 486 U.S. at 869 (explaining that a delay of 10 months "would normally foreclose relief based on a violation of § 455(a)").

In November of 2008, the clerk's office assigned the undersigned to handle the movant's criminal case. It is undisputed that the movant knew in the fall of 2008 that the clerk's office made such assignment and that the undersigned acted in advance of the enforcement action. It is also undisputed that: (1) the movant knew in the spring of 2009 that the undersigned's husband had an affiliation with Bradshaw and that he hired Bradshaw attorneys to represent certain entities in bankruptcy proceedings and (2) the

movant knew in the spring of 2010 that the undersigned received potential threats. The movant filed his motion to recuse on January 29, 2014. Nothing excuses the delay in doing so.

It cannot be said that the movant sought the undersigned's recusal at the first opportunity or within a reasonable time frame after ascertaining the facts tending to support his request for recusal. Even though aware that the undersigned took steps prior to the enforcement action to ensure that a large number of criminal cases could be addressed in a timely and appropriate manner, the movant waited until August 5, 2010, that is, nearly two years, to raise his concerns regarding the enforcement action. Similarly, although the movant knew in the spring of 2009 that he had hired Bradshaw attorneys to represent five businesses affiliated with and/or owned in substantial part by him and knew in the spring of 2010 that the undersigned received potential threats, the movant waited until January 29, 2014 to seek disqualification. Because he waited nearly five years to advance his concerns about Bradshaw and nearly four years to advance his concerns about the potential threats, it is clear that the movant did not promptly seek recusal after he discovered the facts on which he bases his request for recusal.

The movant does not demonstrate good cause that excuses his tardiness. Despite being aware of the ground based on the enforcement action, the ground based on Bradshaw's involvement in bankruptcy proceedings and the ground based on potential threats, the movant declined to make the undersigned aware of his concerns so that the undersigned could assess the merits of them before taking further steps. Rather than raise his concerns about the enforcement action and ask to conduct related discovery at the earliest possible time, the movant chose to pursue a Freedom of Information Act request with ICE. The movant stands by the course that he chose, and he again faults the government for his failure to seek recusal earlier. But, the law requires a party with knowledge of the facts to alert the court to their existence at the earliest possible time so that the merits of the request for recusal can be assessed. Despite having access to the

requisite facts, the movant opted not to have his concerns addressed at the earliest possible moment and chose to rely on the information only when he thought it might serve his interests.

Similarly, the movant does not adequately explain the failure to raise his other concerns in post-judgment proceedings or on direct appeal. With regard to the receipt of potential threats, it is clear that the movant could have inquired about the manner in which the undersigned followed up with officials after receiving potential threats and could have raised his belated arguments in post-judgment proceedings and appellate proceedings. Concerning Bradshaw's involvement in bankruptcy proceedings, the movant ignores the choices that he made. Given the history of the undersigned and the undersigned's spouse in the legal community, the movant cannot credibly assert that he and defense counsel were unaware of the undersigned's connection to Bradshaw when they retained Bradshaw attorneys to represent certain entities in bankruptcy proceedings.[11] Surely, the movant knew all of the facts and only relied on some of them in support of his earlier request for recusal under § 455(a). Absolutely nothing prevented the movant from arguing the points he now makes, including that the requirements of § 455(b) necessitated recusal. If he believed any provision of § 455 prevented the undersigned from presiding over earlier proceedings or these proceedings, the movant could have asserted such belief earlier. *See,*

---

[11] The undersigned notes that Guy R. Cook and F. Montgomery Brown have known the undersigned and the undersigned's husband for many years. The undersigned also notes that: (1) Bradshaw is listed on the undersigned's conflict list, which has been published on the website for the United States District Court for the Northern District of Iowa since at least 2003 and (2) defense counsel admitted that they reviewed De La Rosa-Loera's motion to recuse, which cited *United States v. Miell*, 2008 U.S. Dist. LEXIS 28451 (N.D. Iowa April 8, 2008), that is, a case that discusses the undersigned's connection to Bradshaw. *See United States v. Martin De La Rosa-Loera*, 08-CR-1313-LRR, docket no. 31 (N.D. Iowa 2009). Notably, F. Montgomery Brown represented Miell in his criminal proceedings.

*e.g.*, *United States v. Pepper*, 518 F.3d 949, 953 (8th Cir. 2008) (explaining appellate authority to assign a case to another judge).

The record establishes that the movant sought to gather information about the enforcement action so that he could use such information to seek recusal in the event that the proceedings did not turn out the way that he wanted them to turn out. But, § 455 is not an arrow in the quiver that allows an unhappy litigant to judge-shop until he finds a judge that rules in his favor; litigants cannot sit silently and then advance their grounds for recusal after they receive a decision that they do not like. *See E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir. 1992) (finding that unexplained delay suggested that the recusal statute was being used for strategic purposes).

Clearly, developments during the proceedings rather than newly acquired knowledge motivated the movant to request recusal. The movant strategically delayed his request for recusal based on the preparations undertaken in advance of the enforcement action until after judgment entered against him. Although content to test the waters throughout nearly all of the proceedings that the undersigned presided over, it appears that the movant viewed the waters as uncomfortably hot after the undersigned imposed a sentence.

Likewise, the movant did not promptly seek the undersigned's recusal after the Supreme Court denied his petition for a writ of certiorari. At no point between October 1, 2012 and September 30, 2013, that is, the date that he filed his motion pursuant to 28 U.S.C. § 2255, did the movant assert his grounds for recusal. Rather, he waited until January 29, 2014 to file his motion to recuse. The movant strategically delayed his request for recusal based on the previous ground, that is, the enforcement action, and the additional grounds, that is, the involvement of Bradshaw in bankruptcy proceedings and the potential threats, until after the undersigned addressed substantive issues and the government raised procedural defenses in these proceedings.

So, although the movant knew the essential facts, he waited to raise his concerns. The movant offers no valid basis to excuse his delay in seeking disqualification. The

record clearly demonstrates that the movant is only relying on § 455 for strategic purposes. Accordingly, the undersigned finds that the movant's motion to recuse is untimely.

### 4. *Waiver and forfeiture*

Although Congress sought to eradicate actual impropriety as well as the appearance of impropriety in the federal judiciary by enacting § 455(a), a party may waive recusal under § 455(a) if the waiver is preceded by a full disclosure on the record of the basis for disqualification. *Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir. 2002) (citing 28 U.S.C. § 455(e)). Judicial review is precluded if a party is aware of the alleged basis for recusal and intentionally chooses not to pursue a claim for recusal. *See Shervin v. Partners Healthcare Sys., Inc.*, 804 F.3d 23, 40-41 (1st Cir. 2015); *United States v. Brice*, 748 F.3d 1288, 1289-90 (D.C. Cir. 2014); *Fletcher*, 323 F.3d at 664; *United States v. Mathison*, 157 F.3d 541, 545-46 (8th Cir. 1998); In re *Cargill, Inc.*, 66 F.3d at 1260-62; *United States v. Nobel*, 696 F.2d 231, 236-37 (3d Cir. 1982). A party, however, may never waive any ground for disqualification that is enumerated in subsection (b). *See* 28 U.S.C. § 455(e); *see also United States v. Robinson*, 439 F.3d 777, 779 (8th Cir. 2006) (observing that recusal under § 455(b)(5)(iv) is mandatory but concluding that there is room for harmless error even if a witness is within the third degree of relationship and is a material witness). Further, inaction by a party after receipt of information that is the basis for a request for recusal may result in forfeiture of a claim. *See Fletcher*, 323 F.3d at 664.

Here, a full disclosure concerning the enforcement action occurred, and the movant made a conscious choice not to raise the issue. Because the movant extinguished any error when he knowingly waived his right to file a motion to recuse based on the enforcement action, judicial review is precluded. *See id*. Therefore, just as the undersigned found in its order denying the movant's motion for a new trial, the undersigned finds that the movant cannot rely on § 455(a) in support of his assertion that disqualification is necessary in light of the undersigned's interactions with agencies prior to the enforcement action.

*See* Rule 33 Order (criminal docket no. 958) at 16; *see also Rubashkin*, 655 F.3d at 857-58 (finding that the defendant knew about the court's pretrial involvement before the enforcement action and defendant's situation could not be compared to situations where a judge failed to make any disclosure of potential bias before or during trial).

As to the pre-sentencing hearing communications and the connection between the undersigned and Bradshaw, it is clear that the movant did not inadvertently fail to raise either ground. He and his seasoned attorneys deliberately chose not to raise the matter of recusal based on particular facts. Because the movant knew all of the essential facts that he now asserts in support of his request for recusal before judgment entered against him, the movant forfeited his claims and, consequently, is foreclosed from asserting them now. *See Fletcher*, 323 F.3d at 664-65.

Additionally, concerning the undersigned's connection to Bradshaw, the movant now deems it appropriate to cite a situation that he created, that is, his decision to hire Bradshaw attorneys even though he had full knowledge of the undersigned's marriage to an attorney who is affiliated with Bradshaw. This is impermissible. *See United States v. Mariano*, 729 F.3d 874, 880-81 (8th Cir. 2013) (recognizing that an invited error can constitute a waiver); *United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) (explaining that "invited error is implicated when a party induces or invites the district court into making an error" (quoting *United States v. Stone*, 139 F.3d 822, 838 (11th Cir. 1998))). The movant acknowledges that he actively participated in bankruptcy proceedings, which presumably includes choosing what firm to retain, and, as a result of opening the door, he cannot complain about his decision now. To the extent that the movant purposely retained lawyers from Bradshaw to force the undersigned's recusal at a later date, § 455 cannot be relied on to effectuate such purpose. *See* In re *BellSouth Corp.*, 334 F.3d 941, 956-58 (11th Cir. 2003) (rejecting argument that § 455 creates an absolute right on the part of a party to select a lawyer with a specific purpose to cause the recusal of the judge); In re *FCC*, 208 F.3d 137, 139-40 (2d Cir. 2000) (observing that

lawyers must avoid appearing in any case in which their appearance may cause the disqualification of a judge assigned to the case); *Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 84-85 (2d Cir. 1996) (expressing concern about the ability of a party to recuse a judge by hiring a particular lawyer).

### C. Merits of Disqualification Claims Under 28 U.S.C. § 455[12]

The movant alleges that the undersigned may have "personal knowledge of disputed evidentiary facts concerning the proceeding," 28 U.S.C. § 455(b)(1), the undersigned is "likely to be a material witness in the proceeding," 28 U.S.C. § 455(b)(5)(iv), and the undersigned's husband had "a financial interest in the subject matter in controversy" or has another "interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4); *see also* 28 U.S.C. § 455(b)(5) (listing disqualifying events that are related to a judge's spouse). With respect to his request for recusal under § 455(b)(1), the movant points to communications that occurred prior to the government's commencement of criminal proceedings against him, communications that occurred prior to the sentencing hearing and communications that might have occurred because several attorneys associated with Bradshaw represented businesses affiliated with Agriprocessors. Concerning § 455(b)(5), the movant again relies on the pre-enforcement action communications and the pre-sentencing hearing communications and to some extent the undersigned's connection to Bradshaw. As to § 455(b)(4), the movant cites to Bradshaw's affiliation with the undersigned's husband. Additionally, the movant alleges that recusal is justified because the undersigned's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). When arguing that an appearance of partiality exists, he relies on the circumstances surrounding the enforcement action, the retention of lawyers affiliated with Bradshaw and the receipt of possible threats.

---

[12] Although the undersigned need not address the merits of the movant's contentions in light of his failure to overcome multiple procedural obstacles, the undersigned will address them in the interest of finality.

The undersigned will address each ground under § 455(b) and § 455(a) and then consider the grounds collectively under § 455(a). When doing so, the undersigned will again keep in mind that (1) it is important that a judge be and appear impartial, *see Liteky*, 510 U.S. at 548 (emphasizing that what matters is the appearance of bias), and (2) it is equally important that a judge not recuse unless required to do so or it would be too easy for those who seek a judge who is favorable to their case to disqualify those judges that they perceive to be unsympathetic merely by publicly questioning their impartiality, *see* H.R. Rep. No. 93-1453 (1974) ("At the same time, in assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision.").

### 1. The undersigned's actions prior to the commencement of the movant's criminal case

It is well settled that the recusal statute

> is self-executing, requiring the judge to disqualify himself [or herself] for personal bias [or for personal knowledge of disputed evidentiary facts] even in the absence of a party complaint. 'Recusal is mandated . . . only if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'

*United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983) (quoting *Trotter v. Int'l Longshoremen's & Warehousemen's Union*, 704 F.2d 1141, 1144 (9th Cir. 1983)) (third alteration in original). It is also well settled that the extrajudicial source factor applies to subsection (a) of § 455 as well as subsection (b)(1) of § 455. *See Liteky*, 510 U.S. at 551-56.

With respect to the latter point, disqualification under § 455 must typically be predicated upon extrajudicial conduct rather than on judicial conduct. *See Story*, 716 F.2d at 1091. Extrajudicial conduct encompasses "personal bias as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view

of the law." *Id.* at 1090 (quoting *Oliver v. Mich. State Bd. of Ed.*, 508 F.2d 178, 180 (6th Cir. 1974)) (quotation marks omitted); *see also Bolin*, 225 F.3d at 1239 (emphasizing that "the allegation of bias must show that 'the bias is personal as distinguished from judicial in nature'" (quoting *United States v. Phillips*, 664 F.2d 971, 1002 (5th Cir. 1981))); *United States v. Meester*, 762 F.2d 867, 884-85 (11th Cir. 1985) (making clear that an allegation of bias sufficient to require disqualification under "section 455 must demonstrate that the alleged bias is personal as opposed to judicial in nature"). "'Personal' bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases." *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251-52 (6th Cir. 1989) (citing *Demjanjuk v. Petrovsky*, 776 F.2d 571, 577 (6th Cir. 1985)); *see also United States v. Bertoli*, 40 F.3d 1384, 1412 (3d Cir. 1994) (stating that an extrajudicial source is defined as a source that is "outside of the official proceedings"); 28 U.S.C. § 455(d) (explaining that a "proceeding" includes "pretrial, trial, appellate review, or other stages of litigation"). Predispositions developed during the course of a trial rarely require recusal, and judicial rulings or opinions that are formed on the basis of facts introduced in the course of a judicial proceeding seldom provide a basis for recusal. *Liteky*, 510 U.S. at 554-55.

Just as disqualifying personal bias must typically emanate from an extrajudicial source, disqualifying knowledge must typically come from an extrajudicial source. Knowledge gained from the discharge of judicial duties is not a basis for disqualification under § 455(b)(1). *See United States v. Carlton*, 534 F.3d 97, 100-01 (2d Cir. 2008). And, knowledge obtained as a result of the discharge of judicial responsibilities cannot, absent extraordinary circumstances, require recusal under § 455(a). *See United States v. Morris*, 988 F.2d 1335, 1337 (4th Cir. 1993). Disqualification is necessary only if there is a reasonable question as to whether a judge has a predisposition towards a party that is wrongful or inappropriate because it is undeserved, is excessive in degree or rests upon knowledge that the judge ought not to possess. *Liteky*, 510 U.S. at 550.

On the whole, the movant's assertions are so speculative and so patently lacking in merit that nothing more need be added to what has already been stated. The information that the undersigned supposedly acquired or conveyed prior to the enforcement action is not extrajudicial. When performing administrative tasks in advance of the enforcement action, the undersigned gained no knowledge concerning any potential arrestee or any possible charges that an arrestee might face. The undersigned only fulfilled judicial duties and only made decisions with respect to the movant after being assigned to his criminal case. The undersigned's "knowledge and the opinion it produced were properly and necessarily acquired [after the government indicted the movant, that is,] in the course of the proceedings." *Id.* at 550. Nothing that the undersigned did or said in connection with any part of the movant's case was based on information from any extrajudicial source. *See id*. at 555.

The appropriateness of safeguarding the rights of hundreds of arrestees cannot reasonably be challenged, and it is irrefutable that acting to preserve the integrity of the court and the possible proceedings that come before it does not render a judge incapable of either exercising impartiality after proceedings are commenced or making determinations throughout their duration on the basis of the evidence in the record. The movant does not accurately describe the functions that are normally performed by a judge, and he fails to properly characterize the nature of the acts undertaken by the undersigned. He neither recognizes that advance preparations are required when a forum to address hundreds of arrestees is requested nor realizes that a defendant should reasonably expect that logistics for a large enforcement action in a small district would be addressed by a judge who is acting in an official capacity.

The undersigned's ordinary administrative efforts, which the undersigned undertook to promote public confidence in the integrity of judicial proceedings, remain outside the strictures of § 455. *See id.* at 556 (concluding that neither rulings and statements in an earlier trial nor "judicial rulings, routine trial administration efforts, and ordinary

admonishments" in subsequent trial provided a basis to recuse because they had no extrajudicial source and did not display "deep-seated and unequivocal antagonism that would render fair judgment impossible"); *United States v. Ayala*, 289 F.3d 16, 27 (1st Cir. 2002) (determining that prior judicial exposure to defendants did not establish a basis for removal); *United States v. Mizell*, 88 F.3d 288, 300 (5th Cir. 1996) (concluding that rules regarding recusal did not apply because judge was required to act and his opinions were acquired in the course of judicial proceedings); *West v. United States*, 994 F.2d 510, 512-13 (8th Cir. 1993) (finding that a judge's actions could not be the basis for a motion to recuse because the judge acted in his judicial capacity); In re *Snyder*, 734 F.2d 334, 343 (8th Cir. 1984) (rev'd on other grounds) (stating that chief judge carried out his judicial responsibilities and "any factual information gained in doing so or any judicial action taken by him as chief judge did not in any way arise in an extra-judicial capacity"). Other judges would have acted and did act in the same manner as the undersigned chose to act. The undersigned's efforts to facilitate the judicial process cannot be a basis for recusal.

The movant assumes that all ex parte contacts have a sinister component. But, permissible ex-parte communication among court officials, pre-trial services officials, government officials, law-enforcement officials, defense counsel, detainees and judges does occur and is required at times. Communications that put the court in a position to do justice in the cases that come before it are not impermissible. *See Allen v. Parkland Sch. Dist.*, 230 F. App'x 189, 193 (3d Cir. 2007) (expressing that it was questionable whether conversation could be considered ex parte and explaining that speculation does not provide a basis for recusal); *Cordoza v. Pac. States Steel Corp.*, 320 F.3d 989, 1000 (9th Cir. 2003) (explaining that it is important to consider whether the information is received in a "personal" or "judicial" capacity, emphasizing that the judge wore two hats—one administrative and one deliberative—that were part of the judicial decision-making process and determining that, to the extent the judge "received limited information ex parte, she did so in order to preserve the integrity of the judicial process").

Clearly, significant logistical issues associated with providing timely initial hearings to hundreds of arrestees required the undersigned's participation. No impermissible communications occurred prior to the enforcement action, during the pendency of judicial proceedings in Waterloo or after such proceedings concluded. The movant's situation only came about after the enforcement action and after further investigation by law enforcement officials facilitated their decision to seek an indictment. No communication whatsoever concerned the movant or any other particular individual, and all communications after the government indicted the movant occurred during judicial proceedings. Because communications never focused on any specific pre-enforcement action or post-enforcement action subject and merely addressed administrative preparations for a large-scale enforcement action, the movant's situation is unlike situations where unnecessary, detailed discussions of the subject matter occurred. *Cf.* In re *Kensington Int'l, Ltd.*, 368 F.3d 289, 309-12 (3d Cir. 2004) (concluding that the extensive ex parte communications from parties and conflicted advisors supported disqualification under § 455(a)); *Edgar v. K.L.*, 93 F.3d 256, 259-60 (7th Cir. 1996) (finding that recusal was required under § 455(b)(1) and § 455(a) because ex parte "discussions in chambers were calculated, material, and wholly unnecessary").

Also, the movant completely ignores the extra precautions that the undersigned and court officials took to ensure that the undersigned only received limited and permissible information. *See United States v. Ruff*, 472 F.3d 1044, 1046 (8th Cir. 2007) (concluding that § 455(a) did not require recusal because a law clerk, who had prosecuted defendant before becoming a judicial employee, had been screened from defendant's case and only performed ministerial duties during defendant's sentencing hearing). Such steps included but were not limited to having court personnel address the necessary arrangements at the off-site location and Judge Scoles address complaints and search warrants just prior to the enforcement action. Further, no evidence whatsoever undermines the undersigned's previous recitation of what occurred prior to the enforcement action.

The movant merely speculates that the undersigned improperly relied on facts that were obtained from a source that was outside of the proceedings. But, he does not state with any specificity the facts that were improperly derived. He is unable to do so because the pre-enforcement action discussions pertained to administrative issues, not substantive issues. The movant's allegations, stripped of unsupported opinions, rumors and beliefs, do not warrant recusal. *See Ryan v. Clarke*, 387 F.3d 785, 793 (8th Cir. 2004) (finding that it was unlikely that improper ex parte communications could have altered the capital sentence imposed by the judge); In re *Brooks*, 383 F.3d 1036, 1043 (D.C. Cir. 2004) (concluding that, because proffered evidence of ex parte meetings did not show that judge had acquired "personal knowledge of disputed evidentiary facts," neither § 455(b)(1) nor § 455(a) required recusal); *Yousef*, 327 F.3d at 169-70 (concluding that ex parte communications with the government did not give judge "personal knowledge of disputed evidentiary facts" necessitating recusal under § 455(b)(1)); *United States v. Boyd*, 208 F.3d 638, 645-47 (7th Cir. 2000), *vacated on other grounds*, 531 U.S. 1135 (2001), (determining that § 455(b)(1) did not require recusal where judge denied having personal, extrajudicial knowledge of defendant from a prior investigation).

The undersigned recognizes that, "[i]n instances of 'closed proceedings that evade outside review, the appearance of impartiality is great . . . and due process may require disqualification.'" *Ryan*, 387 F.3d at 794 (quoting *Jones v. Luebbers*, 359 F.3d 1005, 1013 (8th Cir. 2004)). Surely, the infringement of a defendant's right to due process must be avoided, and appropriate steps must be taken when the need to preserve such right arises. When responding to the proposed enforcement action, the undersigned took all necessary steps to preserve the rights of every arrestee.

Contrary to the movant's assertion otherwise, no impermissible communications occurred. There is a complete absence of activity specifically connected to the prosecution of the movant or any other individual. This case is not like cases where nefarious interactions occurred. *Cf.* In re *Faulkner*, 856 F.2d 716, 721 (5th Cir. 1988) (finding that

judge must stand down from case because "a relative with a close relationship to the judge [was] an important participant in key transactions forming the basis of an indictment" and such relative "communicated to the judge, substantially though maybe not extensively or in great detail, material facts and her opinions and attitudes regarding those facts"); *United States v. Singer*, 710 F.2d 431, 435-36 (8th Cir. 1983) (determining that judge needed to recuse because he guided counsel for the government through almost every element of the trial and admitted in front of the jury that he was helping the government try its case).

There is no evidence in the record showing that the undersigned made statements relating in any way to the enforcement action arrestees, their prosecution, the movant or the movant's prosecution. *See United States v. Norton*, 700 F.2d 1072, 1076 (6th Cir. 1983) (concluding that recusal under § 455(a) was not required because the judge's remarks were not directed at defendants). Further, the movant unfairly attributes statements to the undersigned and impermissibly takes words and phrases from various records out of context. *See, e.g.*, *LoCascio v. United States*, 473 F.3d 493, 496-97 (2d Cir. 2007) (examining comment in context); *United States v. Mitchell*, 886 F.2d 667, 671 (4th Cir. 1989) (reviewing entire conversation, which was "quite innocuous"); *United States v. Carmichael*, 726 F.2d 158, 160-62 (4th Cir. 1984) (examining comments in context). Broad expression or sponsorship of a commitment to do justice does not require disqualification.

In sum, the undersigned gained no "personal knowledge of disputed evidentiary facts" when preparing the court to take part in proceedings related to the enforcement action. 28 U.S.C. § 455(b)(1). The general information that the undersigned did learn while performing administrative duties, such as that the enforcement action could result in a large number of arrestees, cannot form the basis of a motion to recuse under § 455(b)(1). Further, as previously discussed, the movant failed to make a sufficient factual or legal showing to require further investigation regarding the pre-indictment stage of litigation. Therefore, the undersigned is not "likely to be a material witness in the

proceeding" and recusal is not required. 28 U.S.C. § 455(b)(5)(iv). Moreover, the circumstances surrounding the enforcement action demonstrate that the undersigned had no interest in the outcome of the case other than the truth be discovered and the law be correctly applied. A reasonable person knowing and understanding all of the facts, including having knowledge of the undersigned's prior rulings and the full record, would conclude that the circumstances do not present even a remote appearance of partiality. When the basis for recusal is accurately articulated—the undersigned's obligation to perform judicial duties requires her to recuse, its lack of merit is readily discerned. Not surprisingly, such basis finds no support in 28 U.S.C. § 455 or relevant case law. Given the lack of any reasonable factual basis for questioning the undersigned's impartiality, subsection (a) of 28 U.S.C. § 455 does not require recusal.

### 2. *The undersigned's actions after the conclusion of the movant's jury trial*

The movant's assertions regarding the events associated with the undersigned's receipt of potential threats fail for many of the same reasons as his assertions regarding the events associated with the enforcement action. Indeed, as a consequence of being assigned to the movant's case, the undersigned necessarily made decisions, and, after learning of those decisions, a number of individuals made statements and contacted the undersigned. Certainly, the facts introduced during the proceedings, not the knowledge of potential threats, informed the undersigned's opinions, and no deep-seated favoritism or antagonism can be attributed to such knowledge. *See Sypolt*, 346 F.3d at 839 ("[W]here a judge's opinions are based on 'facts introduced or events occurring in the course of the current proceedings,' those opinions warrant recusal under § 455(a) only if they 'display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" (quoting *Liteky*, 510 U.S. at 555).

Throughout the movant's case and in every other case, the undersigned conscientiously endeavored to "'ask [herself] what a reasonable person, knowing all the relevant facts, would think about [her] impartiality.'" *Greenspan*, 26 F.3d at 1005

(quoting *Hines*, 696 F.2d at 728).  The recusal statute cannot be read to require disqualification when a judge learns information that relates to possible wrongdoing by individuals who are interested in pending litigation and determines that such information cannot reasonably compromise the judge's impartiality.  It also cannot be read to require a judge to refrain from fulfilling his or her obligation to report possibly threatening communications or subsequently inquiring about the legitimacy of such communications.

During proceedings that generate substantial publicity, potentially threatening communications are commonplace.  Unlike cases where a defendant actually made a specific threat to the presiding judge and took some step to carry it out, the movant's case involved members of the public who made statements that could be regarded as threatening or intimidating.  The undersigned took proper steps after learning of such statements. Namely, the undersigned made the United States Marshals Service aware of the statements so that it could fulfill its duties regarding the judicial process, which include the duty to ensure that safe and secure judicial proceedings are conducted and the duty to protect participants, such as the undersigned, the jurors that participated in the proceedings and other members of the judiciary.  It is neither surprising nor remarkable that the undersigned notified proper officials after learning of possibly threatening statements and followed up with them.[13]

Once again, the movant assumes that the undersigned must have acted in an improper manner and mischaracterizes the undersigned's follow-up after reporting the potentially threatening statements to the United States Marshals Service.  Any "concern" about the progress of investigations related to the desire to have feedback about what steps

---

[13] The undersigned notes that the Administrative Office of the United States Courts instructs judges to report all unusual contacts and possible threats to the United States Marshals Service.  Over the course of the undersigned's career, some threats had been referred to the United States Attorney for the Northern District of Iowa.  At some point, the United States Department of Justice determined that matters involving a judge should be addressed by officials outside the judge's home district.

were taken and what information was learned from those individuals who were conducting the investigation. When following up with law enforcement officials, the undersigned either did not know the United States Attorney's Office for the Northern District of Iowa had recused or did not know what office had been assigned the matter. No follow-up communication to law enforcement officials ever concerned whether individuals should be prosecuted or whether anyone posed an imminent danger to either the undersigned or other individuals who had some association with the court. Absolutely nothing supports the movant's notion that the undersigned and the government had a collaborative relationship.

The law regarding disqualification does not require outlandish statements to be accepted as true. The movant's speculation that the receipt of potential threats might have played a part in the sentence that the undersigned imposed is belied by the record. All of the undersigned's actions indicate that the undersigned addressed all matters in a neutral and disinterested fashion. The undersigned reasonably formed opinions and conclusions that are reflected in the record, which includes the undersigned's sentencing memorandum. The record does not establish that the undersigned had any fear of the movant or anyone else, and, even if the movant could show some apprehension, the record does not demonstrate it had any effect on the undersigned's objectivity. Merely knowing that a possible threat has been made in response to official rulings does not mandate recusal unless such knowledge contributed to an appearance of personal bias or prejudice. *See United States v. Dehghani*, 550 F.3d 716, 721-22 (8th Cir. 2008) (emphasizing that an empty threat does not require recusal); *United States v. Holland*, 519 F.3d 909, 915 (9th Cir. 2008) (agreeing that "recusal is not automatic on the mere basis of the judge's knowledge of the threat" (quoting *United States v. Gamboa*, 439 F.3d 796, 817 (8th Cir. 2006))); *Yousef*, 327 F.3d at 169-70 (determining that threat did not require recusal); *United States v. Yu-Leung*, 51 F.3d 1116, 1120 (2d Cir. 1995) (holding that judge's behavior after being advised that defendant made a death threat against him demonstrated no basis for defendant's personal bias claim); *cf. Greenspan*, 26 F.3d at 1005 (concluding

that recusal was required because judge learned before sentencing that defendant had conspired to kill him and his family, the conspiracy allegedly spanned several states and included a number of persons who contributed large sums of money to hire a "hit man" and judge's behavior contributed to the appearance of bias). Neither the movant nor anyone closely associated with him ever made inappropriate statements to the undersigned or had any issues with the undersigned during pending proceedings. Additionally, the nature of the communications that the undersigned did receive and the undersigned's response to them clearly indicate that the undersigned took appropriate steps. Therefore, the movant's conclusory allegations, which are unsupported by any facts, are an insufficient basis for disqualification.

In sum, an inordinate amount of time and effort has been expended on addressing speculative and unfounded allegations by a party that is dissatisfied with rulings. Except in rare circumstances, remarks, opinions and rulings in prior proceedings may not be the basis for disqualification under either § 455(a) or § 455(b)(1). *Liteky*, 510 U.S. at 555-56. The inquiry under § 455(a) focuses on whether the judge's "impartiality might reasonably be questioned," and the inquiry under § 455(b)(1) focuses on whether the circumstances show that the judge has a personal bias or prejudice. Rare circumstances do not exist in this case. Further, given the record, it is clear that the undersigned does not have "personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). It is also clear that the undersigned is not "likely to be a material witness in the proceeding." 28 U.S.C. § 455(b)(5)(iv); *see Pesnell v. Arsenault*, 543 F.3d 1038, 1044 (9th Cir. 2008) (emphasizing that § 455(b)(5)(iv) did not require the judge to recuse because "there [was] no showing that [the judge] would be required to be a witness as to any material fact in the action"); *United States v. Rivera*, 802 F.2d 593, 601 (2d Cir.

1986) (concluding that, because alleged facts of improper judicial or prosecutorial conduct did not warrant a hearing, judge properly declined to recuse under § 455(b)(5)(iv)).[14]

### 3. *The undersigned's spouse*

The former partnership of the undersigned's spouse is so peripheral to the central events of this case that no plausible basis for recusal exists. "'A judge who cannot be expected to remain impartial through trivial matters such as this should not be sitting even when his [or her] family is unaffected.'" *Sw. Bell Tel. Co.*, 153 F.3d at 523 (quoting In re *Nat'l Union Fire Ins. Co.*, 839 F.2d 1226, 1230 (7th Cir. 1988)); *see also Pashaian*, 88 F.3d at 83 (observing that "it would simply be unrealistic to assume . . . that partners in today's law firms invariably 'have an interest that could be substantially affected by the outcome of' any case in which any other partner is involved" (quoting 28 U.S.C. § 455(b)(5)(iii))) (emphasis omitted). It cannot be said that the undersigned, the undersigned's spouse or any person within the third degree of relationship to the undersigned or the undersigned's spouse: (1) is a party to this proceeding; (2) is a lawyer in this proceeding; (3) has an interest that could be substantially affected by the outcome of this proceeding; or (4) is likely to be a material witness in this proceeding. *See* 28 U.S.C. § 455(b)(5). The undersigned's spouse did not obtain any information concerning these proceedings because he had no involvement whatsoever in the movant's criminal case or matters related to bankruptcy proceedings, and he has no interest whatsoever that could be substantially affected by the outcome of this case. *See generally* 28 U.S.C. § 455(b)(1); 28 U.S.C. § 455(b)(4); 28 U.S.C. § 455(b)(5)(iii). Further, recusal under subsection (a) would be appropriate only if a reasonable person with knowledge of all of the relevant facts, including that attorneys that are associated with Bradshaw might testify, would

---

[14] Little need be said about the movant's contention that the government's assertion of a possible conflict of interest provides a basis to recuse because it is frivolous. The movant again layers speculative premises on top of each other to attempt to obtain the undersigned's recusal. Given the movant's frantic and tenuous arguments, the undersigned cannot help but doubt the movant's honest-to-goodness faith in any of his arguments.

reasonably believe that, by virtue of the undersigned's marriage, the undersigned might approach and decide this case differently than the undersigned would have otherwise approached and decided it. *See Cheney*, 541 U.S. at 928-29. A well-informed individual would not conclude that an appearance of impropriety exists simply because Bradshaw attorneys previously provided representation to bankrupt entities, especially considering that the movant made the decision to hire Bradshaw attorneys even though he knew that the undersigned's spouse had an affiliation with Bradshaw. Stated differently, a reasonable observer who is informed of all of the surrounding facts and circumstances would conclude that the employment status of the undersigned's husband would play no role whatsoever in the undersigned's handling of the current proceedings.

Furthermore, the undersigned's spouse is no longer an equity partner of Bradshaw. As of December 31, 2010, he became of counsel, that is, his employment with Bradshaw is limited to occasionally assisting in the preparation and management of select cases and his receipt of compensation is not based on the fees generated by other Bradshaw attorneys. The fact that the undersigned's spouse had a partnership interest in Bradshaw in the past does not require disqualification because no Bradshaw attorney actually participated in the movant's prior criminal proceedings. Bradshaw attorneys only represented bankrupt entities in bankruptcy proceedings that were unrelated to the movant's criminal case.[15] *Cf. Hook v. McDade*, 89 F.3d 350, 354-55 (7th Cir. 1996) (finding that disqualification under § 455(a) was not warranted because neither the judge's

---

[15] The undersigned notes that Nevel Properties Corporation, Amereeka Properties, LLC, SFG Corporation, Best Value, Incorporated and Cottonballs, LLC had little, if anything, to do with the movant's criminal proceedings and only passing reference is made to them. *See, e.g.*, January 26, 2009 Hearing Transcript (criminal docket no. 774) at 49-50; April 28, 2010 Sentencing Hearing Transcript (criminal docket no. 936) at 69-70; April 29, 2010 Sentencing Hearing Transcript (criminal docket no. 937) at 497, 522-24; Defense Exhibits 10244, 11019, 11022A, 11030, 11022C, 11022D, 11023, 11127 & 11132 (criminal docket nos. 912-196, 912-225, 912-228, 912-229, 912-230, 912-231, 912-232, 912-264 & 912-269).

wife nor her law firm appeared in the criminal case or the related civil case, the civil case had no bearing on the criminal trial and representation of a party by the judge's wife occurred in an unrelated civil case); *Easley v. Univ. of Mich. Bd. of Regents*, 853 F.2d 1352, 1356-58 (6th Cir. 1988) (directing that an evidentiary hearing be held in light of school's allegations concerning judge's affiliations and associations, including that judge was alumnus of school, judge's son was alumnus of school, judge was former partner of a law firm that represented the school, judge had two sons that were partners of that firm, judge sometimes served as a volunteer fund raiser for the school and judge was a member of a committee and a club associated with the school); In re *Nat'l Union Fire Ins. Co.*, 839 F.2d at 1229-30 (concluding that recusal was not required where party retained judge's son to represent it in an unrelated matter). And, there is no factual basis whatsoever that permits one to conclude that the undersigned's spouse ever had any involvement in, knowledge of or interest in anything related to the movant's prior criminal proceedings.

The movant properly refrained from asserting in earlier proceedings that provisions of the recusal statute applied because the undersigned's spouse had a financial interest or other interest in separate bankruptcy proceedings, especially considering that speculative, remote and insubstantial interests do not mandate disqualification. *See* In re *Vazquez-Botet*, 464 F.3d 54, 57-60 (1st Cir. 2006) (concluding that mandamus relief was not appropriate in light of the requirements of § 455(b) and the circumstances, which involved the judge's wife, who had some involvement with matters that were tangential to defendant's criminal case); *Sensley v. Albritton*, 385 F.3d 591, 599-601 (5th Cir. 2004) (holding that neither § 455(b)(4) nor § 455(b)(5)(iii) required recusal because the alleged indirect impact on the employment of the judge's spouse was arrived at "by layering several speculative premises on top of one another"); *United States v. Lauersen*, 348 F.3d 329, 333-37 (2d Cir. 2003), *vacated on other grounds*, 543 U.S. 1097 (2005), (determining that recusal is not required under § 455(a) in every criminal case where a judge has an interest in a crime victim entitled to restitution); *IQ Prods. Co. v. Pennzoil*

*Prods. Co.*, 305 F.3d 368, 377-78 (5th Cir. 2002) (determining that neither § 455(b)(5)(iii) nor § 455(a) required the judge to recuse because the fact that her father-in-law was a retired partner of the firm that represented a party was "too remote to raise a reasonable doubt about her impartiality"); *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 988 (7th Cir. 2001) (finding that party's perceptions of a financial interest or other interest based on consulting contracts secured by the judge's wife were attenuated and without foundation in law or in fact); *Jenkins v. Ark. Power & Light Co.*, 140 F.3d 1161, 1165 (8th Cir. 1998) (concluding that § 455(b)(5)(iii) did not require recusal because judge's son was not involved in litigation and son's interest would not be substantially affected by the outcome of the case); *Pashaian*, 88 F.3d at 83-84 (concluding that, even though a partner of an attorney that represented a party was married to the sister of the judge's wife and falls within the class of people who are within the third degree of each other, recusal under § 455(b)(5)(iii) was not required because the partner did not have an interest that could be substantially affected by the outcome of the case); In re *Drexel Burnham Lambert, Inc.*, 861 F.2d at 1314-15 (finding that there was no nexus, direct, indirect or otherwise, between pending litigation and interest of judge's wife). The suggestion that Bradshaw attorneys only obtained fees because the undersigned granted the government's motion to dismiss the criminal forfeiture allegation is unreasonable and speculative, especially considering that the record establishes that the debtors paid all earned fees prior to the entry of the November 19, 2009 dismissal order.[16] *See Microsoft Corp.*, 530 U.S. at 1302 (concluding that son's representation of party in unrelated proceedings did not require

---

[16] The undersigned notes that the court did not dismiss without prejudice the government's Immigration Counts and related forfeiture allegation sua sponte or without all of the parties' consent. Rather, the court dismissed the Immigration Counts and the related forfeiture allegation on November 19, 2009 because the government determined that the jury's findings eclipsed any need to pursue additional convictions, bankruptcy proceedings eliminated the need to pursue a criminal conviction or a judgment of forfeiture against Agriprocessors and the parties agreed that dismissal without prejudice was appropriate.

recusal); In re *Kan. Pub. Emp. Ret. Sys.*, 85 F.3d at 1362 (finding that recusal was not required where a judge's rulings in the case before him may have had a collateral effect upon issues in a separate declaratory judgment action implicating a company in which the judge owned stock); In re *Billedeaux*, 972 F.2d 104, 106 (5th Cir. 1992) ("A 'remote, contingent, or speculative' interest is not one 'which reasonably brings into question a judge's partiality." (quoting In re *Drexel Burnham Lambert, Inc.*, 861 F.2d at 1313)); In re *Placid Oil Co.*, 802 F.2d 783, 787 (5th Cir. 1986) ("A remote, contingent, and speculative interest is not a financial interest within the meaning of the recusal statute . . . nor does it create a situation in which a judge's impartiality might reasonably be questioned.").

As for the movant's current proceedings, the movant does not identify an "interest" that is cognizable under subsection (b) and, even if he had, such interest could not be substantially affected by the outcome of this proceeding. *See, e.g.*, *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1113 (5th Cir. 1980) (emphasizing that non-economic interests of partners in a law firm that is handling the case may affect a judge's bias or prejudice). The movant does not offer any explanation of how an interest of the undersigned's spouse could possibly be affected by the undersigned's rulings in this case. The undersigned's spouse has no interest in the outcome of this case that is beyond the interest of any citizen that is concerned with criminal justice in the United States. And, no financial interest would be created by any ruling that might be entered in this litigation. It can be said with absolute certainty that, regardless of the decision that is reached in these proceedings, no interest, financial or otherwise, of the undersigned or the undersigned's spouse would be advanced.

The movant argues that the undersigned must recuse under § 455 because he might call Bradshaw attorneys as witnesses. Such argument is akin to asking that the undersigned recuse because the undersigned's former law partner is one of the attorneys currently representing the movant. The movant advocates a broad interpretation of subsection (b).

He implies that it refers to any attorney, without restriction, with whom the undersigned's spouse formerly practiced and requires recusal whenever a witness from a firm that is associated with the undersigned's spouse is called to testify in a pending case. Such an interpretation is untenable. The movant provides no authority in support of his expansive view of subsection (b), which is that it makes no difference how attenuated a relationship with a judge's spouse is and recusal is required any time a colleague of a spouse is called to testify as a witness in a case.

The undersigned's spouse is not a party to this proceeding, and nobody that is related to either the undersigned or the undersigned's spouse is a party to this proceeding. *See* 28 U.S.C. § 455(b)(5)(i). In addition, the Commentary to Canon 3C(1)(d)(ii), from which § 455(b)(5)(ii) is taken, provides:

> The fact that a lawyer in a proceeding is affiliated with a law firm with which a relative of the judge is affiliated does not of itself disqualify the judge. However, [the fact that] "the judge's impartiality might reasonably be questioned" under Canon 3C(1), or [the fact that] the relative is known by the judge to have an interest in the law firm that could be "substantially affected by the outcome of the proceeding" under Canon 3C(1)(d)(iii) [may require the judge's disqualification].

No attorney of Bradshaw is providing representation in this proceeding, and the involvement of Bradshaw attorneys would be limited to providing non-privileged information that relates to their previous representation on behalf of bankrupt entities that had no involvement in the movant's criminal proceedings. *See* In re *Hatcher*, 150 F.3d 631, 632 (7th Cir. 1998) (finding recusal not warranted under § 455(b)(ii) because judge's son was not acting as a lawyer in a proceeding that involved members of a street gang when he had worked in the United States Attorney's office as a legal intern on a related, but separate, criminal trial). No benefit and no appearance of a benefit could arise in a case such as this where the current affiliation of the undersigned's husband with Bradshaw is limited and any testimony concerns representation provided to bankrupt entities that had

no involvement in the movant's criminal proceedings. *See generally* 28 U.S.C. § 455(b)(4); 28 U.S.C. § 455(b)(5)(iii); *see also Lauersen*, 348 F.3d at 336 ("[A]n insubstantial interest in a non-party, even one with some relationship to the case, is not an automatic basis for recusal."). Further, subsection (b)(5)(iv) does not mandate recusal unless the judge or the judge's spouse is likely to be a material witness, that is, a witness who can testify about matters having some logical connection with the consequential facts of a case. As neither of these circumstances is present, subsection (b)(5)(iv) does not require the undersigned's recusal.

"The care with which [the provisions of subsection (b)] are drafted should make a court hesitate to treat the general language of § 455(a) as a bar to judicial service whenever a relative has 'something to do with' a party . . . ." In re *Nat'l Union Fire Ins. Co.*, 839 F.2d at 1229. Because he did not show an interest could be substantially affected by the outcome of this litigation or establish any other disqualifying situation, the movant cannot base his request for recusal on subsection (b). And, the speculative assertion that Bradshaw attorneys, who are non-parties in this case, might testify is an insufficient basis to disqualify the undersigned under subsection (a). *See United States v. Fazio*, 487 F.3d 646, 653 (8th Cir. 2007) (agreeing that § 455(b)(5) did not require recusal where judge's wife was a cousin to one of the witnesses because a first cousin is considered the fourth degree of relationship and finding that § 455(a) did not require recusal because the questioned relationship was between the judge and a witness, not a party, the testimony was more favorable to the defendant than the government and no fractious relationship between the judge and the defendant existed); *United States v. Lang*, 364 F.3d 1210, 1217-19 (10th Cir. 2005), *vacated on other grounds*, 543 U.S. 1108 (2005), (finding that judge did not commit plain error in failing to recuse even though she previously worked in prosecutor's office, became friends with prosecutor in case when she worked for the government, her husband worked as an Assistant United States Attorney in the same office as the prosecutor, she met with the prosecutor's wife and mother-in-law in her chambers

during a recess in the trial and defendant stole documents in question while working in the same courthouse as the judge); *United States v. Cole*, 293 F.3d 153, 164 (4th Cir. 2002) (stating that recusal is necessary only where a judge's relationship with a witness would cause a neutral third party to reasonably question her impartiality); *Parrish v. Bd. of Comm'rs*, 524 F.2d 98, 104 (5th Cir. 1975) (finding that judge's acquaintanceship or friendship with witnesses and counsel did not exceed what is expected of the associational activities of the usual judge). A reasonable person, knowing and understanding all of the facts and circumstances, would not conclude that the undersigned's impartiality might reasonably be questioned. *See Fletcher*, 323 F.3d at 665-66 (concluding that a situation involving the plaintiffs' former attorney, who was listed as a fact witness for trial, was a close friend of the judge and had previously represented the judge, did not require the judge to recuse).

### 4. The grounds considered collectively

The movant does not allege any actual bias or prejudice by the undersigned. *See Mims v. Shapp*, 541 F.2d 415, 417 (3d Cir. 1976) (defining "personal bias" as "an attitude toward [the] petitioner that is significantly different from and more particularized than the normal, general feelings of society at large"). Needless to say, the undersigned has no such bias or prejudice against the movant. And, none of the circumstances identified by the movant affected the fairness or integrity of his prior proceedings. Absolutely nothing indicates prejudgment of facts or the outcome of the dispute. *See Franklin v. McCaughtry*, 398 F.3d 955, 962 (7th Cir. 2005) (finding that a due process violation occurred where the judge decided defendant was guilty prior to trial); *Yamaha Motor Corp., U.S.A. v. Riney*, 21 F.3d 793, 798 (8th Cir. 1994) (explaining how bias can be shown).

With respect to this proceeding, it is significant that none of the criteria set forth in § 455(b) require recusal. If a relative's participation or any other circumstance identified under subsection (b) does not require recusal, subsection (a) cannot be read so broadly as to render meaningless what is permissible under subsection (b). *See Baker v. Hostetler*

*LLP v. U.S. Dep't of Commerce*, 471 F.3d 1355, 1357-58 (D.C. Cir. 2006) (determining that, because Congress gave careful consideration to the question of when a judge must recuse under subsection (b), recusal under subsection (a) may be required only under "rare and extraordinary circumstances"); *Veneklase v. City of Fargo*, 236 F.3d 899, 901 (8th Cir. 2000) (observing that the complained of situation was so far removed from a situation listed in § 455(b) as to make even the appearance of bias under § 455(a) improbable). When all of the facts and circumstances are considered, it becomes abundantly clear that the movant's grounds for recusal are baseless. *See DeTemple*, 162 F.3d at 288 ("[A]ny reasonable observer familiar with the facts of this case would recognize that the number of reasons [asserted] as a basis for recusal reflects . . . ingenuity in finding conflicts around every corner rather than the merit of [the] claim.").

Having thoroughly considered the movant's arguments and the applicable law, the undersigned finds that a reasonable person, being fully advised of all of the facts, would not harbor any doubt regarding the undersigned's impartiality. *See Little Rock Sch. Dist.*, 839 F.2d at 1302-03 (requiring review of full record, not just an isolated incident). A reasonable, objective observer would believe that the undersigned would be able to disregard the limited knowledge that the undersigned obtained as a result of fulfilling administrative responsibilities and set aside personal feelings that arose in proceedings related to the enforcement action, just as all judges do in cases that are related to other cases. Such observer would also believe that neither the connection to Bradshaw nor the follow-up with law enforcement officials after reporting potentially threatening statements would play any role whatsoever in the undersigned's handling of the current proceedings. Consequently, the undersigned declines to recuse under § 455(a).[17]

---

[17] Since the enforcement action, the movant, defense counsel, the movant's family, members of the movant's community and others have spent a great deal of time soliciting support from numerous individuals. The views and opinions of those individuals cannot be squared with the record. Moreover, the appropriate inquiry is from the point of view

(continued...)

## V. CONCLUSION

Many of the movant's arguments boil down to a desire to invalidate all of the undersigned's prior actions. The movant, however, is procedurally barred from making such arguments because he either raised them in prior proceedings or had the ability to raise them in prior proceedings.[18] And, the movant fails to overcome other procedural hurdles, including those that relate to notions of timeliness, waiver and forfeiture, that prevent him from seeking disqualification in this proceeding. Moreover, much, if not all, of the movant's motion to recuse is premised on fallacious reasoning. *See DeTemple*, 162 F.3d at 287 (stating that suspicion or "unsupported, irrational, or highly tenuous

---

[17](…continued)
of a reasonable person with access to all of the relevant facts as they existed, not as they were surmised or reported. The average man on the street need not consider the unsubstantiated concerns expressed by public and private individuals, especially when it is apparent that such individuals have neither considered all of the relevant facts and circumstances nor applied the entire body of law relating to disqualification.

[18] The undersigned notes that, even if a basis to recuse under § 455(a) existed, a recusal under § 455(a) does not always require the parties to readjudicate the case. *See United States v. Abello-Silva*, 1997 U.S. App. LEXIS 3300 at *4-5 (10th Cir. Feb. 20, 1997) (concluding that prior proceeding should not be nullified); *Coclanes v. Sagun*, 1996 U.S. App. LEXIS 12614 at *3-4 (7th Cir. May 13, 1996) (explaining that a litigant "must show that the reasons leading to recusal under 28 U.S.C. § 455(a) had at least some potential to affect the disposition of the case"); *El Fenix de P.R. v. M/Y Johanny*, 36 F.3d 136, 141-42 (1st Cir. 1994) (limiting scope of permissible review after a judge deems it appropriate to recuse); *United States v. Murphy*, 768 F.2d 1518, 1539 (7th Cir. 1985) ("What [defendant] wants is not recusal from future proceedings but the nullification of everything that went before. We conclude that this is not the appropriate consequence of a recusal for appearance of impropriety. In cases decided under § 455(a), disqualification runs from the time the motion was made or granted."); *see also United States v. Barrett*, 111 F.3d 947, 952-53 (D.C. Cir. 1997) (citing cases for the proposition that disqualification for the appearance of impropriety runs prospectively). Similarly, not all situations under § 455(b) nullify prior proceedings. *See, e.g., Robinson*, 439 F.3d at 779 (observing that recusal under § 455(b)(5)(iv) is mandatory but concluding that there is room for harmless error even if a witness is within the third degree of relationship and is a material witness).

speculation" is not a basis for recusal under § 455(a)). Contrary to the movant's position, the undersigned never unconstitutionally inserted herself into the movant's criminal case. *See DeTemple*, 162 F.3d at 287 ("[T]he more common a potentially biasing circumstance and the less easily avoidable it seems, the less that circumstance will appear to a knowledgeable observer as a sign of partiality." (quoting In re *Allied-Signal, Inc.*, 891 F.2d 967, 971 (1st Cir. 1989))). The undersigned did not express personal support for or policy agreement with the enforcement action and only acted to ensure that the court could gather the necessary resources to guarantee arrestees their rights. Rampant rumors and innuendo stemming from the arrest and prosecution of almost four hundred employees for immigration violations spurred some erroneous perception. The movant impermissibly seizes on such erroneous perception.

Although it may seem appealing to yield to another judge because the allegations of impropriety are a distraction from the main issues and it may in the short term expedite resolution of pending matters, the law regarding recusal does not permit a judge to avoid his or her duty to sit on difficult or controversial cases and requires a judge to refrain from providing a vehicle for a party to shop among judges. The movant's contentions regarding judicial misconduct are completely devoid of merit, and his assertions regarding the undersigned's husband are misguided and unsupported by authority. Thus, none of the circumstances that the movant cites require the undersigned to recuse under § 455(b). And, no reasonable observer, cognizant of all of the facts and circumstances, would reasonably question the undersigned's ability to fairly, thoroughly and impartially handle the movant's case. Therefore, disqualification under § 455(a) is inappropriate. Accordingly, the undersigned declines to recuse in this matter.

**IT IS THEREFORE ORDERED:**

The movant's motion to recuse (civil docket no. 12) is **DENIED**.

**DATED** this 20th day of January, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA